**WEINBERG LAW OFFICES, P.C.**
Yoni Weinberg, Esq. (306357)
11601 Wilshire Blvd., #500
Los Angeles, CA 90025
Telephone: (818) 697-1079
Facsimile: (855) 682-4983
E-mail: yoni@weinberglawoffices.com

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIKOUSIS LEGACY INC.,<br><br>                              Plaintiff<br>       v.<br><br>B- GAS LIMITED A/K/A BEPALO LPG SHIPPING LTD.; B-GAS A/S; BERGSHAV SHIPPING LTD. ; B-GAS HOLDING, LTD; BERGSHAV AFRAMAX, LTD; BERGSHAV SHIPHOLDING AS; BERGSHAV INVEST AS; LPG INVEST AS; ATLE BERGSHAVEN<br><br><br>                              Defendants | **Case No. 22-cv-3273**<br><br><br>**PLAINTIFF'S ORIGINAL VERIFIED COMPLAINT**<br><br><br><br>**ADMIRALTY** |

**PLAINTIFF'S ORIGINAL VERIFIED COMPLAINT**

Plaintiff SIKOUSIS LEGACY INC., by and through undersigned counsel, for its Verified

Complaint against Defendants: B-GAS LIMITED A/K/A BEPALO LPG SHIPPING LTD; B-GAS

A/S; BERGSHAV SHIPPING LTD; B-GAS HOLDING LTD; BERGSHAV AFRAMAX, LTD;

BERGSHAV SHIPHOLDING AS; BERGSHAV INVEST AS; LPG INVEST AS and ATLE

BERGSHAVEN (collectively, the "Bergshav Group") alleges and pleads as follows:

**INTRODUCTION**

Plaintiff Sikousis Legacy, Inc, is an arbitration award-creditor of defendant B-Gas Limited,

and files this *in personam* complaint with *quasi-in-rem* attachment in admiralty under Rule B of

1

the Supplemental Rules for Certain Admiralty and Maritime Claims. Plaintiff requests the attachment of the motor tanker BERICA as security to satisfy its USD 7.5 million arbitration award against B-Gas Limited. The BERICA is, or will soon be, within the jurisdiction of this Court.

All but one of the defendants are corporate entities established in Norway and Cyprus. What they have in common is the single individual defendant, Atle Bergshaven, who owns, dominates and controls them, is using them to shuffle assets and avoid paying judgment creditors. Bergshaven is the ultimate beneficial owner of the BERICA. The BERICA was recently listed for sale and her transfer to third parties is imminent. Thus, her sale could result in the arbitration award being thwarted.

The damages awarded to Plaintiff against B-Gas Limited arise from the repudiation of a bareboat charter party contract for one of Plaintiff's vessels that had a remaining term of approximately 9 years. The charterer, B-Gas Limited, repudiated the charter party because Plaintiff refused to accede to its demand to discount the agreed hire payable to Plaintiff under the charter party by 50% over a period of 6 months, to be repaid after a period of 2 years. Essentially, B-Gas Limited demanded an extension of unsecured credit of USD 750,000.00, for a term of 2 ½ years, from Plaintiff. When Plaintiff refused, Defendants caused B-Gas Limited to withdraw from the charter party contract and repudiate it.

Within one month after the rejection of their demand, Defendants radically changed the asset-holding structure of their group. They quickly incorporated two (2) brand new corporate entities to manipulate and take over the valuable assets of the bareboat charterer B-Gas Limited. Less than two months later, they reallocated the ownership of the substantial assets of the corporate bareboat charterer, B-Gas Limited, to the newly incorporated entities, stripping B-Gas Limited of all its assets – 4 vessels – and forcing it to lease them back in order to remain in business. They papered-over the fraudulent stripping of the assets as "sales", which on their face

2

were for an enormous undervalue.  These were not arm's length transactions.  Within three months, after stripping B-Gas Limited of its assets, they forced it to continue operating on a shoestring, deliberately pushing it to the brink of insolvency.  One month later, they caused B-Gas Limited to default on its hire payment obligations to Plaintiff.

When Plaintiff asserted its contractual rights and demanded arbitration under the charter party, Defendants engaged an accounting firm in Cyprus specializing in voluntary liquidations and instructed it to extrajudicially liquidate B-Gas Limited.  They even stripped the corporate name of B-Gas Limited, changing it to Bepalo LPG Shipping Ltd. before procuring its voluntary liquidation.  This was done so that they would not harm their reputation in the marketplace, and they could continue to trade under the "B-Gas" brand, with the newly minted entities and the assets of B-Gas Limited they had thus usurped.   Despite all of this, in correspondence to third parties, authored by B-Gas A/S and Bepalo, they specifically blamed the insolvency of B-Gas Limited a/k/a Bepalo on Plaintiff's refusal to accede to the demand to discount the charter hire rate.

## I.      JURISDICTION, VENUE, AND PARTIES

1.      This is an admiralty and maritime claim within the meaning of rule 9(h) of the Federal Rules of Civil Procedure.  It involves claims for the breach of a maritime contract, *i.e.* an executed bareboat charter party for the employment of a seagoing cargo vessel, and the enforcement of a maritime arbitration award.  This case falls under the Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333, and is brought under the provisions of Rule B of the Supplemental Rules for Certain Admiralty or Maritime Claims, and Asset Forfeiture Actions (hereinafter "Supplemental Rule B").

2.      At all times material hereto Plaintiff, SIKOUSIS LEGACY INC. (hereinafter "Owners" or "Plaintiff"), was a corporation organized under the laws of the Republic of the Marshall Islands.  Plaintiff is the registered owner of the LPGC ECO CORSAIR ("ECO

3

CORSAIR"), a fully pressurized liquid petroleum gas carrier vessel registered in the Republic of the Marshall Islands with IMO No. 9710311. Plaintiff bareboat chartered the ECO CORSAIR to Defendant B-GAS LIMITED A/K/A BEPALO LPG SHIPPING LTD.

3.      At all times material hereto Defendant, B-GAS LIMITED A/K/A BEPALO LPG SHIPPING LTD. (hereinafter "B-Gas Limited" or "Charterers"), was and is a foreign company organized under the laws of the Republic of Cyprus with a registered office address at Miltonos Street 32, 3050, Limassol, Cyprus.

4.      At all times material hereto B-Gas Limited was the bareboat charterer of the ECO CORSAIR under a bareboat charter party contract with Plaintiff dated March 22, 2019. A copy of the bareboat charter and addenda thereto are attached to this Original Verified Complaint as **EXHIBIT 1**. Though incorporated in Cyprus, with a registered office there, the commercial management of B-Gas Limited was actually carried on entirely by Defendant B-GAS A/S in Copenhagen, Denmark.

5.      At all times material hereto B-GAS A/S was a corporation or other type of business entity organized under the laws of Denmark.

6.      At all times material hereto BERGSHAV SHIPPING, LTD. was and is a foreign company organized under the laws of Cyprus with its registered office address at Miltonos Street No. 32, 3050, Limassol, Cyprus.

7.      At all times material hereto B-GAS HOLDING LTD. was and is a foreign company organized under the laws of Cyprus with its registered office address at Miltonos Street No. 32, 3050, Limassol, Cyprus.

8.      At all times material hereto BERGSHAV AFRAMAX, LTD. is a company organized in Cyprus with its business address at Miltonos Street No. 32  3050, Limassol, Cyprus. Bergshav Aframax Ltd., and is the registered owner of the Bahamas-flagged motor tanker BERICA,

an Aframax-type crude oil carrier with IMO No. 9392822. The M/T BERICA is or will be soon within the district of this Court.

9.     At all times material hereto BERGSHAV SHIPHOLDING AS is a corporation organized and existing under the laws of Norway with its business address at Hasseldalen, NO-4878 Grimstad, Norway.

10.     At all times material hereto BERGSHAV INVEST AS is a corporation or other business entity organized under the laws of Norway with its business address at Hasseldalen, NO-4978 Grimstad, Norway.

11.     At all times material hereto LPG INVEST AS is a corporation or other business entity organized under the laws of Norway with its business address at Hasseldalen, NO-4978 Grimstad, Norway.

12.     At all times material hereto Atle Bergshaven, is an individual person and a resident of Norway, with his address at Hasseldalen, NO-4878 Grimstad, Norway. Atle Bergshaven is the chairman of the board of Bergshav Shipholding AS, and is its major and controlling shareholder. He is also the chairman of the board of all the other named corporate Defendants to wit: B-Gas A/S; Bergshav Shipping, Ltd; B-Gas, Limited; B-Gas Holding Ltd.; Bergshav Aframax, Ltd.; Bergshav Invest AS; LPG Invest AS over which he has the majority-controlling shares.

## II.     THE SUBSTANTIVE CLAIMS

13.     Under the March 22, 2019 bareboat charter party (the "Bareboat Charter") and addenda thereto, Plaintiff chartered its vessel ECO CORSAIR (the "Vessel") to B-Gas Limited for a term of "10 years +/- 15 days in Charterers option." *See* EXHIBIT 1 (at Box 21), Charter Period (Cl.2).

14.  Under clause 30 of the Bareboat Charter, Plaintiff as owner of the ECO CORSAIR, and B-Gas Limited as bareboat charterer, agreed to submit all of their disputes for resolution in London arbitration and under English law.

15.  The Vessel was delivered to B-Gas Limited on December 5, 2019. Thereafter, having taken delivery as bareboat charterer, B-Gas Limited traded the vessel under the name "B GAS SUNRISE". The minimum period of the Bareboat Charter was until November 20, 2029.

16.  In May 2020, B-Gas Limited approached Plaintiff demanding a 50% reduction of the charter hire for the following six (6) months. It represented to Plaintiff that the COVID-19 pandemic had affected its earnings, and it proposed repaying the reduction-caused shortfall over the next two (2) years of the charter party term. The proposal of B-Gas Limited was addressed not only to Plaintiff but also to three other owners under the same management who had vessels on bareboat charter to B-Gas Limited.

17.  Plaintiff rejected the hire reduction proposal of B-Gas Limited and insisted hire should continue to be paid without any reduction or interruption as provided in the Bareboat Charter.

18.  On or about September 21, 2020, Plaintiff's solicitors in London learned from Charterers' defense association, Nordisk Legal Services ("Nordisk") (acting on behalf of B-Gas Limited), that under another charter party B-Gas Limited, was not paying outstanding hires - an agreement of some kind  having been reached between B-Gas Limited and other owners of  its bareboat chartered vessels in this regard.  Moreover, they were advised B-Gas Limited's "current financial position and cash flow situation is challenging."

19.  On October 1, 2020, Plaintiff commenced arbitration under the Bareboat Charter for B-Gas Limited's breach, with notice to Nordisk of the appointment of London Maritime Arbitrator Mr. Robert Gaisford as Plaintiff's arbitrator. B-Gas Limited failed to give notice of appointment of

an arbitrator. Accordingly, under the Bareboat Charter terms, on October 17, 2020, Plaintiff appointed Mr. Gaisford as sole arbitrator in this matter.

20.    On October 6, 2020, in breach of the Bareboat Charter, B-Gas Limited part-paid Plaintiff's September Invoice in the sum of USD 62,500. This represented 50% of the hire due to Plaintiff. No explanation was given by B-Gas Limited regarding the failure to pay the full hire owed.

21.    On October 13, 2020, Plaintiff received a letter purporting to be from "Bepalo LPG Shipping Limited (formerly B-Gas Limited) 32 Miltonos Street 3050, Limassol, Cyprus" stating it was terminating the charter party dated March 22, 2019 and that Charterers were discontinuing their business effective as of 15:00 hours on 13 October 2020 and would enter into voluntary winding up proceedings in Cyprus.  A copy of this notice is hereto attached as **EXHIBIT 2**.

22.    Also, on or about October 13, 2020, Plaintiff received, as an e-mail attachment, a letter signed by B-Gas A/S, advising Plaintiff:  (1) that Bepalo LPG Shipping Ltd (formerly known as B-Gas Limited), has declared insolvency under Cypriot law;  (2) that it attributed the financial difficulties of B-Gas/Bepalo to the effect of the COVID-19 Pandemic; (3)  that the insolvency was the result of one vessel owner's unwillingness to participate in an accommodation proposed by the Charterers;  (4)  that "the declaration of insolvency is related to BEPALO located in Cyprus, only"; (5) that the commercial management of the following vessels remained with B-Gas A/S: "B GAS CHAMPION;" "B GAS COMMANDER;" "B GAS CRUSADER;" "B GAS VENUS;" "B GAS NEPTUNE;" "B GAS MASTER;"  "B GAS MARINER;"  "B GAS MAUD;" "B GAS MARGRETHE".  The correspondence was signed by "Andrew Cristian McPhail, Chief Executive Officer, B-Gas A/S."  See document hereto attached as **EXHIBIT 3**.

23.    In light of Charterers' failure to pay hire to Plaintiff for September and October, with no explanation as to whether payment would ever be made, coupled with their unlawful

purported notice of termination and their failure to resile from it, the totality of Charterers' conduct plainly constituted repudiatory and/or renunciatory breaches of the Bareboat Charter. Accordingly, on October 29, 2020, once Plaintiff had made arrangements to take over physical possession and control of its vessel (as this was a bareboat charter not a time charter), Plaintiff accepted Charterers' repudiatory and renunciatory breaches and terminated the Bareboat Charter, without prejudice to Plaintiff's rights to claim damages.

### III.      THE ARBITRATION AWARD

24.      On June 7, 2021, Arbitrator Robert Gaisford, as maritime arbitrator in the city of London, made and issued his written and reasoned arbitral award in favor of Plaintiff and against B-Gas Limited awarding Plaintiff the following:

(a)      In respect of earned and unpaid bareboat charter hire the amount of U.S. $34,274.19; *See* a copy of the Award attached hereto as **EXHIBIT 4**, at pp. 9, 14.

(b)      In respect of damages arising from the repudiation and renunciation of the bareboat charter the amount of U.S. $6,271,873.80; (*Id.*, at p. 14).

(c)      Interest on the unpaid bareboat charter hire balance of U.S. $34,274.19 at the 3-months' Interbank offered rate in London (Libor or its successor) as quoted by the British Bankers' Association (BBA) on the date when the hire fell due, increased by 2%. Running from October 2, 2020; (*Id.*, at p. 14).

(d)      Interest on the U.S. $6,271,873.80 amount of the repudiation damages at the rate of 5% compounded every 3 months until paid; (*Id.*, at p. 15).

(e)      The cost of the arbitration award (arbitrator's fees) in the amount of Pounds Sterling 6,200.00 (U.S. $7,640.45) with interest at 5% per annum and pro rata,

compounded at three-monthly rests, from the date of such payment until that of reimbursement; (*Id.*, at p. 15).

(f)     Further, Plaintiff was awarded the costs of the reference to the arbitration, including the fees of its legal professionals Plaintiff instructed in the U.K. which the arbitrator has not yet formalized into a written award and they remain to be assessed.  (*Id.*, at p. 16).  In this regard, Plaintiff notes that under English law, arbitration fees and costs are awarded to the prevailing party, including fees of solicitors and counsel that were engaged in the arbitration. Plaintiff estimates the award for these costs will be approximately U.S. $100,000.00.

25.     Plaintiff has duly and repeatedly demanded of B-Gas Limited to honor the arbitration award. It, and the other Defendants who controlled it, and have used it as their alter ego and their conduit, have refused.[1]

26.     Plaintiff is entitled to and intends to apply to the High Court in London to have the award made into a judgment of that court.

## IV.     DEFENDANTS' STRUCTURE, OWNERSHIP, CORPORATE INTERRELATIONSHIPS AND FRAUDULENT TRANSFERS OF ASSETS

27.     Plaintiff entered in the Bareboat Charter with B-Gas Limited on the assurance of its status as a subsidiary of a well-known and creditworthy ocean shipping group of which it was a part – the Bergshav Group - that had been in business for over two decades.

---

[1] In January 2021 Plaintiff to secure the anticipated arbitration award obtained an attachment of another vessel controlled by the Bergshav Group and obtained security in respect of its claims.  However, the attachment was vacated on procedural formalities relating to the verification of the Complaint.  The merits and substantive grounds for the attachment were never reached.  At that time the arbitration award in favor of Plaintiff had not been made.

28.     Approximately one year preceding the repudiation, Plaintiff had been approached by Mr. Andreas Hannevik - the chief financial officer of Bergshav Management AS - manager for the ultimate corporate beneficial owner of B-Gas Limited, *i.e.* Bergshav Shipholding AS.  Mr. Hannevik represented to Plaintiff that B-Gas Limited was a financially sound corporate entity, with substantial fixed assets, solid business standing and excellent prospects. Mr. Hannevik was intimately acquainted with the business of B-Gas Limited having served, until recently, as its CEO. Mr. Hannevik approached Plaintiff's manager with the aim to *sell* B-Gas Limited to Plaintiff.  *See* e-mail correspondence of Mr. Hannevik hereto attached as **EXHIBIT 5**.

29.     In accordance with the 2018 audited financial report of B-Gas Limited for the year ending December 31, 2018, a copy of which is included in EXHIBIT 5, and is hereto individually attached as **EXHIBIT 6,** B-Gas Limited owned the following assets:  (1) B-Gas A/S of Denmark, which was the commercial manager of the vessels owned or chartered-in by B-Gas Limited; and (2) the LPG vessels "B GAS CRUSADER," "B GAS COMMANDER," and "B GAS CHAMPION".  *See* Exhibit 6 at pp. 10, 32-34.

30.     In accordance with the said audited account of B-Gas Limited for 2018: "The Company is controlled by Bergshav Shipping Ltd, incorporated in Cyprus, which owns 51% of the Company's equity share capital."   "The ultimate controlling party is Mr. Atle Bergshaven."  *See Id.* at p. 36.

31.     The directors of B-Gas Limited in 2018 included Mr. Atle Bergshaven; Mr. Nicolai Eirik Lorentzen; and Mr. Vryonis Kyperesis.

32.     By April and May 2020, the holding-ownership structure of the Bergshav Group, of which B-Gas Limited was part, was as shown in Table I below:

**TABLE I**

**BERHSHAV GROUP STRUCTURE IN APRIL AND MAY 2020**



33.     With reference to the corporate organization diagram in the above Table I, and specifically Bergshav Shipholding AS, "The chairman of the board, Atle Bergshaven, directly and indirectly controls all the shares in the company."  *See* Note 8, to 2020 Annual Financial Report of Bergshav Shipholding AS filed with the Norwegian Corporate Register, hereto attached together with free translation in English as **EXHIBIT 7** at p. 24/25[2].

---

[2] Foreign language exhibits are preceded by their translation in English, and page references are to the translation.

34.   With reference to Table I, Bergshav Shipholding AS owned 100 percent of each: Bergshav Shipping AS, Bergshav Invest AS, and Bergshav Shipping Ltd. *See* Note 4 in EXHIBIT 7 at p. 23/25.

35.   With reference to Table I, Bergshav Shipping Ltd. owned 100% of Bergshav Aframax Ltd., which at all times material hereto was and continues to be the registered owner of the BERICA.

36.   With reference to Table I, B-Gas Limited was the 100% shareholder of B-Gas A/S, which was the commercial manager of the vessels owned or chartered-in by B-Gas Limited. EXHIBIT 6 at pp. 10, 32, 34.[3]

37.   With reference to Table I, B-Gas Limited was the sole shareholder of 100% of the issued share capital of B-Gas Maud Ltd., a corporate entity organized and existing under the laws of Cyprus.  An extract from the incorporation document of B-Gas Maud Ltd , together with a free translation in English, is hereto attached as **EXHIBIT 8**.

38.   B-Gas Maud Ltd. was the sole registered owner of the liquid petroleum gas carrier B-GAS MAUD, as shown in the records of the vessel database Equasis.

**A.**   ***Preparations for the Fraudulent Restructuring of the Ownership of B-Gas Limited***

39.   Once Plaintiff made it clear to the Bergshav Group that it was unwilling to agree to reduction of the agreed hire, the Bergshav Group took the first major step in splitting out of the ownership structure the assets of B-Gas Limited that they wished to internally reallocate.   This first major step in this process was to sever out of the Cyprus-based holding structure of the group, the liability-laden B-Gas Limited which was controlled by the Cypriot holding company Bergshav

---

[3] The records of the Danish Business Authority show B-Gas Limited was the 100 % legal owner of B-Gas A/S until January 1, 2019.  On that date B-Gas Limited transferred its entire ownership interest to the shareholders of B-Gas Limited. This fact was not disclosed to Plaintiff.  The controlling beneficial ownership of B-Gas A/S remains with Atle Bergshaven who has indirect possession of 51% of its shares.

Shipping Ltd.  The result of this change in the structure is shown in the following Table II and it was accomplished by acts of the Bergshav Group averred below:

**TABLE II**

**BERGSHAV GROUP STRUCTURE AFTER JUNE 5, 2020**



40.     On June 2, 2020, Bergshav Shipholding AS acting by and through its director and chairman, Atle Bergshaven, incorporated "B-Gas Holding Ltd." in Cyprus, with a Memorandum of Association of even date and received all 1,000 of the newly established company's issued shares.  *See* Memorandum and Articles Association translated extracts from pp. 6 and 14 hereto attached as **EXHIBIT 9**.

41.     According to the Cypriot Corporations Registrar records, on June 5, 2020, Bergshav Shipping Ltd. transferred to the newly created B-Gas Holding Ltd. all of its rights, title and interest

in B-Gas Limited, consisting of 44,920 preferred redeemable shares in B-Gas Limited, and 612 common shares in the same company. A copy of the record of this transfer from the public records of the Cypriot Corporations Registrar is hereto attached as **EXHIBIT 10**.

42.     No sale price is recited in EXHIBIT 10, nor any cause, reason, or consideration for the transfer and disposal of shareholdings in a business entity that included among its valuable trading assets four (4) oceangoing liquid petroleum gas carrier vessels.

43.     The gratuitous transfer by Bergshav Shipping Ltd. of its controlling interest over B-Gas Limited to the newly-minted B-Gas Holding Ltd. corporate entity without any assets, was a sham transaction of no lawful economic or financial benefit whatsoever to Bergshav Shipping Ltd. or to B-Gas Holding, Ltd.

44.     B-Gas Holding Ltd. was not intended to enter, as it did not, into any good faith commercial or business relationships or transactions either externally or internally within the Bergshav Group.  Its sole purpose was to operate as a buffer and a corporate alter ego that might ward off unpaid creditors of the controlling corporate shareholder, Bergshav Shipping Ltd., its mastermind chairman, Atle Bergshaven, and his other corporate alter ego, Bergshav Shipholding AS.

45.     The role of B-Gas Holding Ltd. was solely that of a conduit for the insulation of Bergshav Shipping Ltd. from liability to the creditors of B-Gas Limited.

**B.     _Stripping Off the Assets of B-Gas Limited and Incorporation of LPG Invest AS_**

46.     On June 4, 2020, just two (2) days after Atle Bergshaven established B-Gas Holding Ltd. in Cyprus, he incorporated another new business entity in Norway.  The name of the entity is LPG Invest AS.  A copy of the Memorandum of Incorporation obtained from the Norwegian Corporations' Register is hereto attached as **EXHIBIT 11**.  On its face, this document purports to have as its founder Bergshav Invest AS and is signed by Atle Bergshaven in his capacity as

14

chairman of the Board of Bergshav Invest AS.  The first directors of LPG Invest AS were three of the directors appointed by the three corporate shareholders of B-Gas Limited, *i.e.* Atle Bergshaven of Bergshav Shipping Ltd, Richard Jansen of and on behalf of Pareto Maritime Secondary Opportunity Funds SA, and Nicolai Eirik Lorentzen of Lorentzen Skibs AS.  *See* Exhibit 11, at p. 2.  All three of these directors were already serving as directors of B-Gas Limited.

47.    On June 16, 2020, the above noted directors and shareholders of LPG Invest AS held a general meeting in which they agreed to increase the share capital of the company with the respective company shares to be held as follows:  Bergshav Invest AS, 110,190; Lorentzen Skibs AS, 24,255; and Pareto Maritime Secondary Opportunity Fund SA, 24,255.  *See* minutes of the said extraordinary meeting, with free translation in English, hereto attached as **EXHBIT 12.**

48.    It follows from the foregoing that the shareholders of LPG Invest AS and its directors were identical to the ultimate beneficial shareholders and directors of B-Gas Limited. This is demonstrable with reference to the 2018 Annual Financial Report of B-Gas Limited, albeit the shareholdings of the Bergshav Group in LPG Invest AS were in excess of 68%, as compared to 51% in B-Gas Limited. *See* EXHIBIT 6, p. 36 at note 19, 23; *see also* p. 36 at note 23.3 and p. 37.

## C.    *Fraudulently Transferring the Ownership of the B-GAS MAUD*

49.    Unbeknownst to Plaintiff, on June 29, 2020, B-Gas Limited transferred to LPG Invest AS its entire ownership interest it had held in the corporate owner of the LPGC vessel B-GAS MAUD (100% of the authorized and issued shares of the Cypriot B-Gas Maud, Ltd.), which it had acquired on May 10, 2019.  *See* copies of the transfer documents obtained from the Cyprus Registrar of Companies, together with translation in English, hereto attached as **EXHIBIT 13**.

50.    The said transfer was made with the approval and participation of the respective three (3) corporate shareholders of the parties to the transaction who acted through their respective

directors in the sale transaction, *i.e.* the shareholders and directors of seller and buyer were the same on both sides of the transaction.

51.     In June 2020, the vessel B-GAS MAUD, which was the sole trading asset of B-Gas Maud Ltd., had a fair market value between USD 11,000,000 and USD 12,000,000 at the relevant time.  The lending bank, Pareto Bank SA, that had lent about USD 5,000,000 to B-Gas Maud Ltd. valued the vessel at USD 6,750,000.  However, the sale of the shares of B-Gas Maud Ltd. by B-Gas Limited to LPG Invest AS was for a mere fraction of these figures, *i.e.* USD 2,525,000.  *See* "Amendment Agreement No. 1 to Senior Secured Term Loan Facility Agreement dated 11 June 2019 B-Gas Maud Ltd. as Borrower and Pareto Bank ASA as Bank," entered into on June 30, 2020, and obtained from Defendant Atle Bergshaven pursuant to court action in Norway, attached hereto as **EXHIBIT 14** at p. 5 of 10.

52.     Moreover, out of the purported USD 2,525,000  price  that  B-Gas  Limited  was required to accept as payment for its sale of its 100% ownership interest in B-GAS MAUD, it actually received only USD 1,325,000 as shown in the documents of the Defendants referred to below.

53.     Under a new arrangement imposed on it by LPG Invest AS, which acted by the same directors and shareholders as those who entirely dominated and controlled B-Gas Limited, the latter was required to continue chartering the vessel B-GAS MAUD under bareboat charter.  Under this new arrangement, in addition to paying monthly hire at a rate of USD 90,000, B-Gas Limited was required to "prepay" to B-Gas Maud Ltd. a lump sum hire amount of USD 1,200,000 that was not to be applied for the monthly hire payments, was not usable as a credit and was not refundable until the expiration of the bareboat charter on or about June 17, 2024.  *See* June 26, 2020 Addendum No.1 to the Bareboat Charter Party between B-Gas Maud Ltd. as "Owners" and B-Gas Ltd as "Charterers"  in  respect  of  the  M/T  B-GAS MAUD, which was obtained from Defendant Atle

Bergshaven pursuant to court action in Norway, and is hereto attached as **EXHIBIT 15**, pp. 1 at ¶ 2.2;  p. 3 at ¶¶ 3-4.

54.     These  actions of the said Defendants were fraudulent as to Plaintiff as creditor of its bareboat charterer B-Gas Limited, having stripped said bareboat charterer of a valuable income producing asset that was disposed of at an extreme undervalue as against the creditors of B-Gas Limited.  Said Defendants improperly appropriated the asset for their own use and benefit, and thus engineered the default to Plaintiff of their subsidiary, B-Gas Limited, that they entirely controlled.

**D.     _Fraudulently Transferring of other vessels to LPG Invest AS_**

55.     On or about July 10, 2020, B-Gas Limited fraudulently transferred the ownership of its vessels "B-GAS CRUSADER"; "B-GAS COMMANDER"; and "B-GAS CHAMPION" to LPG Invest AS.  _See_ copies of the respective "History" pages from shipping database "Equasis" of the transfer of all three vessels hereto attached as **EXHIBIT 16**, recording the respective transfers from B-Gas Limited to LPG Invest AS, at the respective page 2 of each record.

56.     As in the case of the sale of the shares of B-Gas Maud Ltd., the B-GAS CRUSADER, B-GAS COMMANDER, and B-GAS CHAMPION  (collectively also referred to as "the Three Vessels") were sold to LPG Invest AS for an extreme undervalue as is clearly demonstrable from documents obtained through court proceedings in Norway from Defendant Atle Bergshaven as particularized below.

57.     Thus, in respect to the Three Vessels, the three shareholders of B-Gas Limited caused it to enter into  memoranda of agreement ("MOA's") for the sale of the said vessels to LPG Invest AS, which the same shareholders also entirely controlled. A copy of the relevant respective MOA's are hereto attached as **EXHIBIT 17**.

58.     The said MOA documents, though undated, are signed by Atle Bergshaven himself on behalf of LPG Invest AS and provide that each of the Three Vessels is sold to LPG Invest AS

for a sale price is USD 200,000, of which only half is to be actually paid and the remaining USD 100,000 is in the form of a credit to the buyer. *Id.* at ¶ 1 (Purchase Price clause), respectively.

59.     The actual date of the transfer of ownership to LPG Invest AS is recorded in the vessel database Equasis as July 10, 2020. *See* EXHIBIT 16.

60.     The estimated market value of each of the Three Vessels on the date of their "sale" was approximately USD 2,000,000, if they were to be sold for further trading.

61.     In parallel with the sale of the Three Vessels, the controlling common shareholders of B-Gas Limited and LPG Invest AS required B-Gas Limited to take on bareboat charter each one of the Three Vessels on the date of their delivery under the respective MOA's, for a daily hire rate of USD 1,000.  Copies of the respective bareboat charter parties are hereto attached respectively as **EXHIBIT 18**.  Copies of the respective bareboat charter rider clauses are hereto attached as **EXHIBIT 19**.  Both, the respective charter parties and rider clauses are signed on behalf of LPG Invest AS by Defendant Atle Bergshaven.

62.      Under the rider clauses of the respective bareboat charter parties, LPG Invest AS required B-Gas Limited to insure the vessels B GAS COMMANDER and B GAS CRUSADER against various risks, including loss or damage to the hull, up to a maximum amount of USD 4,800,000; and the B GAS CHAMPION against the same risks for USD 4,200,000.  *See* the respective rider clauses at EXHIBIT 19 at each respective ¶ 33.1.2 (i).  These numbers suggest the values that LPG Invest AS considered the Three Vessels had for purposes of insurance.

63.     Considering the price for which LPG Invest AS acquired the Three Vessels from B-Gas Limited that its shareholders entirely dominated and controlled, *i.e.* for  5% of market value, or 2.083% of its own insurable value figures, it cannot be disputed that Defendants intentionally manipulated B-Gas Limited to transfer the Three Vessels for a gross undervalue, to the detriment of  Plaintiff.

18

64.     Even the scrap value of each of the Three Vessels on July 10, 2020, if they were to be sold for demolition, was USD 500,000 each, *i.e.* 5 times greater than the price for which they were sold to LPG Invest AS.

65.     As a result of the Defendants' manipulation of the corporate asset-holding structures of B-Gas Limited, and other business entities of the Bergshav Group, B-Gas Limited was entirely stripped of its revenue-producing assets, which were appropriated by Defendants.   Table III below schematically represents the asset holding status and structure of the Bergshav Group through July 2020.

**TABLE III**

**BERGHSHAV GROUP STRUCTURE THROUGH JULY2020**



66.     In consequence of the action of Defendants set out in the foregoing, the Defendants who had the beneficial and legal control over B-Gas Limited, namely Atle Bergshaven and Bergshav Shipholding AS, stripped B-Gas Limited of all of its valuable assets, *i.e.* the vessels B-

GAS MAUD; B-GAS CRUSADER; B-GAS COMMANDER; and B-GAS CHAMPION, and transferred same to other corporate entities that the said Defendants owned and/or controlled.  The stripping and shifting of assets as described in the foregoing is immediately evident by comparing the corporate and asset-holding structure of B-Gas Limited before June 2020, as schematically represented above in Table I and as it became starting in June 2020 as schematically represented in Table II, and July 2020 as schematically represented in Table III.

67.     Having stripped B-Gas Limited of every tangible asset it had held, Defendants even stripped it of its corporate name, as noted in the foregoing ¶¶  21 and 22, and in the shareholders' resolution of B-Gas Limited hereto attached as **EXHIBIT 20** and dated September 30, 2020 authorizing the change of the name of  B-Gas Limited to Bepalo LPG Shipping Ltd.  "BEPALO" appears to be an acronym formed by the initial two letters of the 3 shareholders of B-Gas Limited, *i.e.* Bergshav Shipping Ltd.; Pareto Maritime Secondary Opportunity Fund SA; and Lorentzen Skibs AS.

68.     The Defendants who resolved to entirely strip B-Gas Limited of its assets, and "voluntarily" liquidate it, had a very practical objective in mind in also changing its name.  They intended to continue carrying on business under the well-established name "B-GAS" in the trade of LPG marine transportation using B-Gas A/S as their front, trading all 4 vessels that were previously in the full ownership of B-Gas Limited before they were fraudulently transferred for a gross undervalue to LPG Invest AS.  Indeed, they publicly stated so and did carry on business using the B GAS CHAMPION, B GAS COMMANDER, B GAS CRUSADER and B GAS MAUD.  *See* EXHIBIT 3.

### E.   _Ownership of the Atle Bergshaven Group Structures and Activities_

69     Atle Bergshaven directly or indirectly controls 100 percent of the shares of Bergshav Shipholding AS, a Norwegian company founded in 1989.  EXHIBIT 7, Note 8 at p. 24; s*ee also* Tables I through III above.

70.     Bergshav Shipholding AS conducts shipping business through the subgroups Bergshav Shipping AS, Bergshav Invest AS, and Bergshav Shipping Ltd.  *Id.* at p. 14. Bergshav Shipholding AS owns 100% of these three companies. *Id.*. Note 4 at p.22.  It does not have any employees.  *Id.*, Note 3 at p. 23.  From a review of Bergshav Shipholding AS's annual report, Bergshav Shipholding AS is referred to as the "Parent Company" and the subgroup companies together with the parent company are referred to as "the Group". *See e.g.* EXHIBIT 7 at pp. 14, 15, 17, 22, 23. 25 at note 11.  Accordingly, there is unity of ownership between Atle Bergshaven, Bergshav Shipholding AS, and the entities of the "subgroup."

71.     The Bergshav Group corporate entities operate out of two commonly shared principal offices, respectively in Norway and Cyprus.   All of the Norwegian entities operate out of an office that lists its address as Hasseldalen NO-4878 Grimstad, Norway.   All of the Cypriot entities operate out of an office that lists its address as Miltonos Street No. 32, 3050, Limassol, Cyprus.

72.     The Parent Company and the Group prepare and file consolidated financial statements. EXHIBIT 7, at p. 21.

73.   The following entities related to Bergshav Shipholding AS file consolidated financial statements with it:

| | |
|---|---|
| Bergshav Shipholding AS | Bergshav Product Tankers AS |
| Bergshav Shipping AS | LPG Invest AS |
| Bergshav Product Mind Ii AS | B-Gas Maud Ltd. |
| Bergshav Product Mind Ii KS | Stealth Berana AS |
| Bergina AS | Bergshav Shipping Ltd. |
| Bergshav Invest AS | Bergshav Aframax Ltd. |
| Bergshav Caribbean AS | B-Gas Holding Ltd. |
| Bergshav Management Co AS | Bepalo LPG Shipping Ltd. |
| B-Gas A / S | |

EXHIBIT 8, at p. 22

74.    At all times material hereto, Defendants B-Gas Limited; B-Gas Holding Ltd.; Bergshav Shipping, Ltd.; LPG Invest AS; B-Gas A/S; and B-Gas Maud Ltd. have had common and overlapping directors and shareholders.   Thus, Atle Bergshaven, Nicolai Eirik Lorentzen and Richard Jansen were at all times material hereto common directors of B-Gas Limited; LPG Invest AS; and B-Gas A/S.  Atle Bergshaven, Vryonis Kyperesis, Panagiotis Ioannou, at all times material hereto were directors of the Cypriot companies: B-Gas Limited, B-Gas Holdings Ltd., B-Gas Maud Ltd. and Bergshav Shipping, Ltd.

75.    The Annual Financial Statements of Bergshav Shipholding AS refer to and treat assets in the legal ownership of one-ship-companies, such as ocean-going vessels, as assets owned by the Group.  For example, with reference to the vessels BERGITTA and BERICA, respectively registered to Bergshav Shipping AS and Bergshav Shipping Ltd., the 2020 annual report provides in relevant part:

> At the turn of the year, the group is the owner of two aframax tankers - resp. MT Bergitta and MT Berica, and sole owner of two 13,000 dwt. product tankers - MT Bernora and MT Caribe Liza. The group is in addition, sole owner of three and part owner of three gas ships and has two more gas ships on leases. The gas vessels are operated commercially by the subsidiary B-Gas A / S in Copenhagen. In addition to this, the group has ownership interests in seven tankers and chemical vessels, as in it all essentials are excluded on bareboat party.

EXHIBIT 7, at p. 14. (emphasis added).

22

76.     There is substantial overlapping in the ownership of the corporate entities made defendants in this proceeding, in respect of which consolidated financial statements are filed by the controlling parent company Bergshav Shipholding AS. For example, Bergshav Invest AS, the company that controls 70% of  LPG Invest AS, is a holding company whose parent company is Bergshav Shipholding AS.  The remaining 30% of LPG Invest AS is controlled by Pareto Maritime Secondary Opportunity Funds SA, and Lorentzen Skibs AS.  EXHIBIT 12, at p. 2.  These are the same entities which together control 49% of B-Gas Shipping Ltd.  B-Gas Holding Ltd., which owns 51% of B-Gas Shipping Ltd., is 100% owned by B-Gas Holding, Ltd. which, in turn is 100% owned by Bergshav Shipholding AS.  Bergshav Shipholding AS is the sole shareholder of Bergshav Shipping Ltd. which, in turn owns Bergshav Aframax Ltd., the registered owner of the  M/T BERICA.

77.     As noted in the foregoing, the three corporate shareholders of the entire equity in B-Gas Limited caused its financial strangulation and destruction by requiring it to transfer to LPG Invest AS all four (4) vessels B-Gas Limited owned for an extreme undervalue.  These vessels were all the means it had to generate revenue.

78.     By reason of the complete overlapping of the ownership and interest of the shareholders of B-Gas Limited and the shareholders of LPG Invest AS, and the surrounding circumstances, it is difficult if not impossible to imagine that the shareholders of B-Gas Limited exercised their decision-making with due regard to the separate personalities of the corporations.

79.     By reason of the extremely one-sided terms for the sale of the entire material wherewithal of B-Gas Limited as set out in the foregoing ¶¶ 39-68, it cannot even be argued that the dominant shareholder of B-Gas Limited, *i.e.* B-Gas Holding Ltd., an assetless throwaway shell of a company, and the remaining shareholders of B-Gas Limited, acted in the best interest of B-Gas Limited.

80.     As averred in the foregoing, Defendant Atle Bergshaven, who owns and 100% - controls Bergshav Shipping Ltd., acting through Bergshav Shipholding AS, which he also owns and 100% controls, incorporated B-Gas Holding Ltd. to act as a conduit to take over the 51% shareholding of Bergshav Shipping Ltd. in B-Gas Limited. The purpose was to deflect and divert any claims against Bergshav Shipping Ltd. and tender B-Gas Limited as an empty shell, as he eventually did.

81.     The actions of the Defendants averred in the foregoing as implemented by and through their respective corporate structures were unlawful and unjust.  They were aimed at forcing Plaintiff to forego or entirely concede the exercise of its contractual rights, against its contractual counterparty B-Gas Limited, for the employment of its vessel, for the agreed upon hire and term. For this purpose, Defendants first stripped off all of the assets of B-Gas Limited, which they appropriated, and when Plaintiff insisted on due contractual performance they caused B-Gas Limited to repudiate the charter party, and procured its extrajudicial liquidation.

82.     The Defendants' "bad-intent" in stripping B-Gas Limited of its assets and causing its liquidation is clear from Defendants' own public admission that their reasons for doing so was "Owner's unwillingness to find a solution with BEPALO."  *See* EXHIBIT 3.

83.     In consequence of the foregoing averments, B-Gas Limited was used by the defendants who controlled it to commit fraud or injustice on Plaintiff.  Namely, Defendant Atle Bergshaven and his various corporate surrogates caused the methodical transfer all of B-Gas Limited's assets to newly established entities in advance of its anticipated repudiation of the Bareboat Charter in order to hinder, frustrate, and thwart Plaintiff's recourse.

84     Significantly, after stripping B-Gas Limited of all its vessels Defendants operated and traded with them under the "B-Gas" brand, as they had traded when they operated when they were owned by B-Gas Limited, with the commercial manager of the operation continuing to be B-

Gas A/S.  *See* EXHIBIT 3 publicly declaring the continuation of the "B-Gas" business with tonnage that included the B-GAS CHAMPION, B-GAS COMMANDER, B-GAS CRUSADER, and B-GAS MAUD.

85.     Notwithstanding their formal separate incorporation, the corporate Defendant Bergshav Shipping, Ltd., acting in concert with the newly incorporated B-Gas Holding Ltd. and LPG Invest AS,  all of which were under the dominion and control of their controlling shareholder and board chairman Atle Bergshaven, designed, participated and implemented an unlawful restructuring scheme, whereby B-Gas Limited would be carved out of the control of Bergshav Shipping, Ltd. and placed under the control of B-Gas Holding, Ltd,  and all of the tangible assets of B-Gas Limited would be transferred to the ownership and control of  LPG Invest AS, leaving B-Gas Holding Ltd. judgment proof.

86.     In so acting to strip off all of the assets of B-Gas Limited and to ringfence them behind the corporate facades of newly minted business entities (and in anticipation of a substantial adverse arbitration award), the said Defendants' actions were intended to disable B-Gas Limited from responding to the arbitration award and putting its assets beyond the reach of Plaintiff as a creditor.   It would be unjust for such fraudulent restructuring and asset stripping to be upheld.

87.     Even though the vessels in the fleet of the Bergshav Group  were  registered in the name of various individual one-ship corporate entities, it is manifest from the specific actions of the said defendants as averred in the foregoing that there was a unity of interest and control over the entities that participated in the restructuring, asset stripping, asset reallocation and ultimately voluntary winding up of B-Gas Limited that the purported corporate independence of the respective one-ship-company vessel owners was simply fictitious, as they were entirely subjugated to the Bergshav Group's business goals and policies, which were implemented by the management and staff of the corporate entities that Atle Bergshaven controlled.

## V.   APPLICATION FOR ATTACHMENT UNDER SUPPLEMENTAL ADMIRALTY RULE B

88.   None of the Defendants are present or can be found in the District within the meaning of Supplemental Rule B. *See Attorney Declaration of attached hereto as* **EXHIBIT 21**. Nevertheless, Defendants have within the District tangible or intangible personal property in the hands of parties who may be named garnishees in the process of maritime attachment and garnishment consisting of debts, credits, or effects.

89.   More particularly, the M/T BERICA, a tanker vessel with IMO No. 9392822 and international call sign C6DY9, owned by Defendants, is or will soon be within the Northern District of California and is expected to berth therein.

90.   Defendants Bergshav Shipholding AS and Atle Bergshaven, used the purported separate incorporation of their surrogate subsidiaries B-Gas Limited a/k/a Bepalo LPG Shipping Ltd.; B-Gas A/S; Bergshav Shipping Ltd.; Bergshav Aframax Ltd.; LPG Holding AS, B-Gas Holding Ltd. and LPG Invest AS abusively to engage in fraudulent corporate restructuring and asset reallocation in anticipation of the maritime arbitration award made against B-Gas Limited a/k/a Bepalo LPG Shipping Ltd.  As part of this process the controlling beneficial owner of the BERICA, defendant Bergshav Shipping, Ltd. fraudulently transferred its controlling interest over B-Gas Limited to B-Gas Holding AS gratuitously, and thereby facilitated and enabled the complete asset-stripping of the bareboat charterer B-Gas Limited in favor of LPG Invest AS.

91.   Bergshav Shipping Ltd., B-Gas Holding Ltd. and LPG Invest AS, acting under the command and control of Atle Bergshaven, who is their ultimate beneficial owner and controlling shareholder, chairman, and controlling shareholder of their parent company, Bergshav Shipholding AS, used their corporate form abusively in exercising their absolute control over B-Gas Limited as follows.  First, to render B-Gas Limited judgment-proof, they caused the stripping of all of its fixed assets, which assets they then took over,  possessed and, used as their own property.   Second,

having entirely stripped B-Gas Limited of its assets, they caused it to continue carrying on business, as their obligor, and accumulate losses.   Third, having reduced B-Gas Limited to virtual insolvency, said defendants caused it to repudiate the Bareboat Charter.   Fourth, having destroyed the solvency of B-Gas Limited and taken over its assets, said Defendants  caused it to undergo its own extrajudicial liquidation.

92.    In having committed the acts summarized in the foregoing ¶ 91, the said Defendants completely dominated and controlled B-Gas Limited for an improper and or fraudulent purpose, *i.e.* to render it incapable of performing the contractual obligations it had undertaken, in order to force Plaintiff to yield to their demands for reduction of hire and extension of credit. The said Defendants' bad intent is transparently obvious in their taking over and exploiting the assets they stripped off B-Gas Limited.  Accordingly, it would be fair and equitable to pierce (or reversely pierce) the corporate veil of B-Gas Limited a/k/a Bepalo LPG Shipping Ltd.; B-Gas AS; Bergshav Shipping Ltd.; Bergshav Shipholding AS; LPG Invest AS; Bergshav Aframax Ltd.; and B-Gas Holding Ltd. in order to reach the economic value of the M/T BERICA, which said Defendants have compartmentalized in a separate corporate pocket, to the detriment of  Plaintiff.

93.    As noted in the foregoing, the Owners of the MT BERICA have already put up this vessel for sale and there is an imminent risk that if she is not attached under this application to the Court, Plaintiff's chances of recovery under its arbitration award will be substantially diminished if not altogether thwarted.

94.    Plaintiff has maritime claims against the Defendants arising out of maritime contract (*i.e.* – the bareboat charter party with B-Gas Limited dated March 22, 2019) as awarded by London Maritime Arbitrator Robert Gaisford.

95.    The amount of Plaintiff's claims based on the arbitration award is as follows:

A. Charter Hire duly invoiced before defendants' repudiation $      34,274.19

C. Loss of earnings from premature termination of the charter $ 6,271,873.80

D. Accrued interest as awarded and estimated interest until

    October 30, 2023 $ 1,008,231.12

E. Arbitrator's fees $       7,640.45

F. Estimated recoverable arbitration costs $     100,000.00

**TOTAL:**    **$ 7,422,109.56**

96. Therefore, Plaintiff's total claim for breach of the maritime contract against Defendants is in the aggregate sum of US$ 7,422,109.56.

**WHEREFORE PREMISES CONSIDERED**, Plaintiff prays as follows:

A. That process in due form of law, according to the practice of this Honorable Court in matters of admiralty and maritime jurisdiction be issued against Defendants and said Defendants be cited to appear and answer the allegations of this Original Verified Complaint;

B. That since the Defendants cannot be found within this District pursuant to Supplemental Rule B, all of the assets of the Defendants presently within this District, or assets expected in this District during the pendency of this action, including, but not limited to, the M/T BERICA and/or any assets within the possession, custody or control of any other garnishee upon whom a copy of the Process of Maritime Attachment and Garnishment issued in this action may be served, be attached and garnished in an amount sufficient to answer Plaintiff's claim;

C. That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof;

D. That judgment be entered against each of the Defendants in the sum of Seven Million, Four Hundred Sixty Nine Thousand, Seven Hundred Eighty Eight Dollars and fortyfour

cents.  (**US $ 7,422,109.56**), together with interest and costs, and the proceeds of the assets attached

be applied in satisfaction thereof;

     E.    That the Court grant such other and further relief as it deems, just, equitable and

proper

Respectfully Submitted,

Dated: June 5, 2022           **WEINBERG LAW OFFICES, P.C.**

By: /s/ Yoni Weinberg
           Yoni Weinberg
           Attorney for Plaintiff
           *Sikousis Legacy Inc.*

*Of Counsel:*
George A. Gaitas
Jonathan M. Chalos
*Pro Hac Vice Applications Forthcoming*
**GAITAS & CHALOS, P.C.**
1908 N. Memorial Way
Houston, Texas 77007
Telephone:    (281) 501-1800
Facsimile:    (832) 962-8178
E-mail:     gaitas@gkclaw.com
           chalos@gkclaw.com

29