1

**BLANK ROME LLP**
Allen Ho (SBN 318187)

2

allen.ho@blankrome.com
2029 Century Park East | 6th Floor

3

Los Angeles, CA 90067
Telephone:    424.239.3400

4

Facsimile:    424.239.3434

5

**BLANK ROME LLP**
Keith B. Letourneau (*admitted pro hac vice*)

6

keith.letourneau@blankrome.com
Zachary Cain (*admitted pro hac vice*)

7

zachary.cain@blankrome.com
717 Texas Avenue, Suite 1400

8

Houston, TX 77002
Telephone:    713.632.8609

9

Facsimile:    713.228.6605

10

Attorneys for Defendant
BERGSHAV AFRAMAX, LTD.

11

12

13

## UNITED STATES DISTRICT COURT

14

## NORTHERN DISTRICT OF CALIFORNIA

15

## SAN FRANCISCO DIVISION

16

SIKOUSIS LEGACY INC.,

| | |
|---|---|
| | Case No. 3:22-cv-03273-CRB |

17

Plaintiff,

Judge:      Hon. Charles R. Breyer

18

vs.

**DEFENDANT BERGSHAV AFRAMAX,
LTD.'S MOTION TO VACATE RULE B
ATTACHMENTS, REQUEST FOR
EXAMINATION OF PLAINTIFFS'
CORPORATE REPRESENTATIVE
PURSUANT TO LOCAL ADMIRALTY
RULE 2.1, AND REQUEST FOR
EXPEDITED RELIEF**

19

B-GAS LIMITED A/K/A BEPALO LPG
SHIPPING LTD.; B-GAS A/S; BERGSHAV

20

SHIPPING LTD.; B-GAS HOLDING, LTD;
BERGSHAV AFRAMAX, LTD; BERGSHAV

21

SHIPHOLDING AS; BERGSHAV INVEST AS;
LPG INVEST AS; ATLE BERGSHAVEN

22

Defendants.

Complaint Filed:   June 6, 2022
Trial Date:          Not Set.

23

24

25

26

27

28

142306.06502/128997097v.1

**DEFENDANT BERGSHAV AFRAMAX, LTD.'S MOTION TO VACATE RULE B ATTACHMENTS,
REQUEST FOR EXAMINATION OF PLAINTIFFS' CORPORATE REPRESENTATIVE PURSUANT TO
LOCAL ADMIRALTY RULE 2.1, AND REQUEST FOR EXPEDITED RELIEF**

## <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION .................................................................................1

II.   REQUEST FOR EXPEDITIED HEARING ........................................4

III.  REQUEST FOR EXAMINATION OF PLAINTIFFS' CORPORATE OFFICER PURSUANT TO ADMIRALTY LOCAL RULE 2.1 ...........................................5

IV.   MOTION TO VACATE:  ARGUMENT AND AUTHORITY ...............7

      A.    Applicable Standards of Review...........................................7

      B.    Plaintiffs Failed to Allege Prima Facie Claims Against Bergshav Aframax................9

      C.    The Evidence Establishes that Bepalo is Separate and Distinct from Bergshav Shipholding AS...........................................15

V.    CONCLUSION AND PRAYER .........................................................19

**DEFENDANT BERGSHAV AFRAMAX, LTD.'S MOTION TO VACATE RULE B ATTACHMENTS, REQUEST FOR EXAMINATION OF PLAINTIFFS' CORPORATE REPRESENTATIVE PURSUANT TO LOCAL ADMIRALTY RULE 2.1, AND REQUEST FOR EXPEDITED RELIEF**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adm'rs of Tulane Educ. Fund v. Ipsen, S.A.*,
   450 F. App'x 326 (5th Cir. 2011) ...................................................................................16

*Bridas S.A.P.I.C. v. Gov't of Turkmenistan*,
   447 F.3d 411 (5th Cir. 2006) .........................................................................................11

*Chan v. Society Expeditions, Inc.*,
   123 F.3d 1287 (9th Cir. 1997) ...............................................................................7, 8, 12

*Cooper v. Pickett*,
   137 F.3d 616 (9th Cir. 1997) ...........................................................................................9

*d'Amico Dry d.a.c. v. Nikka Fin., Inc.*,
   429 F. Supp. 3d 1290 (S.D. Ala. 2019).........................................................................11

*Eitzen Chem. (Singapore) PTE, Ltd. v. Carib Petroleum*,
   749 F. App'x 765 (11th Cir. 2018) ................................................................................12

*Equatorial Marine Fuel Mgmt. Servs. Pte Ltd. v. MISC Berhad*,
   591 F.3d 1208 (9th Cir. 2010) .........................................................................................7

*Harris Rutsky & Co. Insurances Services, Inc. v. Bell & Clements Ltd.*,
   328 F.3d 1122 (9th Cir. 2003) .........................................................................................8

*K Investment, Inc. v. B-Gas Limited N/K/A Bepalo LPG Shipping, Ltd. et al.*,
   C.A. No. 3:21-cv-00016 (S.D. Tex.)................................................................................1

*Kilkenny v. Arco Marine Inc.*,
   800 F.2d 853 (9th Cir. 1986) ...........................................................................................8

*Kirno Hill Corp. v. Holt*,
   618 F.2d 982 (2d Cir. 1980)...........................................................................................8

*Kite Shipping LLC v. San Juan Navigation Corp.*,
   2012 WL 4049936 (S.D. Cal. Sept. 13, 2012)................................................................9

*M/V Am. Queen v. San Diego Marine Constr. Corp.*,
   708 F.2d 1483 (9th Cir. 1983), and (3)...........................................................................8

*N.L.R.B. v. Greater Kansas City Roofing*,
   2 F.3d 1047 (10th Cir. 1993) .........................................................................................12

142306.06502/128997097v.1

ii

**DEFENDANT BERGSHAV AFRAMAX, LTD.'S MOTION TO VACATE RULE B ATTACHMENTS, REQUEST FOR EXAMINATION OF PLAINTIFFS' CORPORATE REPRESENTATIVE PURSUANT TO LOCAL ADMIRALTY RULE 2.1, AND REQUEST FOR EXPEDITED RELIEF**

*Oldendorff Carriers GmbH & Co., KG v. Grand China Shipping (Hong Kong) Co., Ltd.*,
    CA C-12-074, 2013 WL 1628358 (S.D. Tex. Mar. 28, 2013).........................................8

*OS Shipping Co. Ltd. v. Global Maritime Trust(s) Private Ltd.*,
    2011 WL 1750449 (D. Or. May 6, 2011) ...............................................................9

*Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*,
    992 F.3d 893 (9th Cir. 2021) ...........................................................8, 11, 12, 16

*Seymour v. Hull & Moreland Eng'g*,
    605 F.2d 1105 (9th Cir. 1979) .............................................................................8

*Stevedoring Services of America v. Ancora Transport, N.V.*,
    59 F.3d 879 (9th Cir. 1995) ................................................................................8

*Tefida v. 1,925 Cartons of Crab*,
    2013 WL 4049011 (W.D. Wash. Aug. 9, 2013) ..................................................9

*United States v. Bennett*,
    621 F.3d 1131 (9th Cir. 2010) .............................................................................8

*United States v. Jon-T Chemicals, Inc.*,
    768 F.2d 686 (5th Cir. 1985) .............................................................................12

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) .............................................................................9

*White Rosebay Shipping S.A. v. HNA Group Co., Ltd.*,
    CA C-12-096, 2012 WL 6858239 (S.D. Tex. Dec. 5, 2012) ..............................15

**Statutes**

28 U.S.C. § 1746.......................................................................................................6

**Other Authorities**

Fed. R. Civ. P. 9(b) .................................................................................................15

Fed. R. Civ. P. Supp. R. E(4)(f).....................................................................1, 4, 5, 9

Fed. R. Civ. P. 9(b) ...................................................................................................9

Fed. R. Civ. P. Supp. R. E(8) ....................................................................................1

**DEFENDANT BERGSHAV AFRAMAX, LTD.'S MOTION TO VACATE RULE B ATTACHMENTS, REQUEST FOR EXAMINATION OF PLAINTIFFS' CORPORATE REPRESENTATIVE PURSUANT TO LOCAL ADMIRALTY RULE 2.1, AND REQUEST FOR EXPEDITED RELIEF**

1    Pursuant to Rule E(4)(f), Supplemental Rules for Certain Admiralty or Maritime Claims of

2    the Federal Rules of Civil Procedure, and subject to its restricted appearance under Rule E(8) as

3    owner of the M/T BERICA ("BERICA" or "Vessel"), Defendant Bergshav Aframax, Ltd.

4    ("Bergshav Aframax") respectfully requests this Court vacate the attachment of the Vessel (as

5    represented by the substitute security posted for the Vessel's release) obtained by Plaintiff Sikousis

6    Legacy Inc. ("Sikousis") and Plaintiffs-in-Intervention K Investments, Inc. ("K Investments") and

7    Bahla Beauty Inc. ("Bahla").   The Plaintiff and Plaintiffs-in-Intervention shall be referred to

8    collectively as "Plaintiffs."

9    **I.    INTRODUCTION**

10    Briefly, each Plaintiff has alleged the breach of charter parties held by each respective

11    Plaintiff with B-Gas Limited, now known as Bepalo LPG Shipping Ltd ("Bepalo"), being the

12    counter party for each of the three contracts.   (A charter party is a maritime contract between a

13    shipowner and a "charterer" for the hire of a vessel.)   Specifically, Plaintiffs allege that Bepalo

14    attempted to negotiate a reduction in charter-hire rates due to financial difficulties brought on by the

15    COVID-19 pandemic, Plaintiffs each respectively refused, and Bepalo subsequently wound up its

16    business, such that the vessels were redelivered to their owners.   But Plaintiffs have not sought to

17    attach the assets of Bepalo – instead, based on allegations of alter-ego status as between nine (9)

18    different entities and individuals (*i.e.*, B-Gas Limited N/K/A Bepalo LPG Shipping, Ltd.; B-Gas

19    A/S; Bergshav Shipping Ltd.; B-Gas Holding Ltd; Bergshav Aframax, Ltd.; Bergshav Shipholding

20    AS; Bergshav Invest AS; LPG Invest AS; and Atle Bergshaven), Plaintiffs attached the Vessel

21    owned by Bergshav Aframax, Ltd, a total stranger to each of the underlying charter parties.

22    It should be noted that Plaintiffs have recently failed in a similar attachment action against a

23    vessel owned by another affiliate company of the larger Bershav group.   Specifically, in *K*

24    *Investment, Inc. v. B-Gas Limited N/K/A Bepalo LPG Shipping, Ltd. et al.*, C.A. No. 3:21-cv-00016

25    (consolidated with related cases 3:21-cv-00017 and 3:21-cv-00018) in the Southern District of

26    Texas, the same groups of Plaintiffs brought suit on the same underlying claims, but instead attached

27

28    **DEFENDANT BERGSHAV AFRAMAX, LTD.'S MOTION TO VACATE RULE B ATTACHMENTS, REQUEST FOR EXAMINATION OF PLAINTIFFS' CORPORATE REPRESENTATIVE PURSUANT TO LOCAL ADMIRALTY RULE 2.1, AND REQUEST FOR EXPEDITED RELIEF**

the M/T BERGITTA, which was owned by Bergshav Shipping AS ("Bergshav Shipping"). Following an evidentiary hearing before Magistrate Judge Andrew Edison wherein Plaintiffs' presented testimony from Mr. Christian Krohn-Hansen (a broker with Plaintiffs' managing agent and the individual who executed the verifications for the Rule B complaints in the Texas actions) (the hearing transcript with Krohn-Hansen's testimony is attached as Ex. A), Bergshav Shipping sought to vacate the attachment on three separate grounds.

First, Bergshav Shipping challenged the sufficiency of the verifications included with Plaintiffs' complaints (which did not purport to affirm his belief in the truth of the basic factual allegations of the complaints, but instead only verified that Krohn-Hansen had merely **read** each of the complaints), and argued that Krohn-Hansen's testimony on the stand confirmed that the deficiency could not be cured by amendment because <u>Krohn-Hansen had admitted that he lacked any personal knowledge to affirm the facts alleged in the complaint which would be necessary to sustain alter ego liability on the part of Bergshav Shipping</u> (i.e., abuse of Bergshav Shipping's corporate form or involvement of Bergshav Shipping in the alleged "asset stripping" of assets from Bepalo). See, e.g., Ex. A at p. 47-48 (Q. "Do you know of any specific facts that Bergshav Shipping AS engaged in that fraudulently or wrongfully damaged the -- or injured the Plaintiffs in this case?"  A. "At this moment I cannot say I remember what Bergshav Shipping AS did specifically.")

Secondly, Bergshav Shipping maintained that Plaintiffs' alter ego allegations were insufficient to allege a *prima facie* claim against Bergshav Shipping.  Essentially, Bergshav Shipping argued that without some direct involvement or use of Bergshav Shipping in the alleged underlying fraud (i.e., asset stripping from Bepalo), there was no basis by which to pierce Bergshav Shipping's corporate veil or hold Bergshav Shipping's assets accountable for debts owed or fraudulent acts purportedly committed by other entities.

Thirdly, Bergshav Shipping adduced evidence establishing that Bergshav Shipholding AS (Bergshav Shipping's parent company) is a separate and distinct entity from its 51%-owned indirect subsidiary Bepalo, and proof that Bepalo's minority shareholders had formalized protections that

**DEFENDANT BERGSHAV AFRAMAX, LTD.'S MOTION TO VACATE RULE B ATTACHMENTS, REQUEST FOR EXAMINATION OF PLAINTIFFS' CORPORATE REPRESENTATIVE PURSUANT TO LOCAL ADMIRALTY RULE 2.1, AND REQUEST FOR EXPEDITED RELIEF**

precluded Bergshav Shipholding AS and/or Atle Bergshaven from exercising the necessary domination and control of the company needed to establish an alter ego status.  That is, Bergshav Shipping produced evidence negating alter ego status and interrupting the alter-ego-entity identity-chain that would need to be traveled to reach Bergshav Shipping's asset, the BERGITTA.

After extensive briefing by the parties, the magistrate issued his memorandum and recommendation, wherein he determined that the "verified" complaints were not in fact verified in accordance with Supplemental Admiralty Rule B.  See Ex. B.  (The magistrate declined to reach Bergshav Shipping's other arguments for vacatur.)  As such, the magistrate concluded that the court lacked jurisdiction over the BERGITTA at the time of the vessel's attachment and recommended that Bergshav Shipping's motion to vacate the attachments be granted.  *Id*.  While Plaintiffs objected to the magistrate's report, the district court nevertheless "accept[ed] Judge Edison's memorandum and recommendation and adopt[ed] it as the opinion of the court."  Ex. C at p. 2.

Plaintiffs then appealed the order of vacatur to the Fifth Circuit.  However, on March 30, 2022, the Fifth Circuit issued its opinion wherein the panel "conclude[d] that the district court did not err in vacating the attachment" and affirming the result below.  See Ex. D.  In reaching that result, the Fifth Circuit specifically noted Krohn-Hansen's testimony during the evidentiary hearing that he "did not verify the truth of the allegations set forth in the verified Complaint."  *Id*. at p. 8.

Plaintiffs did not seek *en banc* reconsideration from the Fifth Circuit or petition the Supreme Court for *certiorari*.  Instead, Plaintiffs initiated this new Rule B action against the BERICA in the Northern District of California on the same claims and premised on the same underlying theory that Bergshav Aframax's property, the BERICA, should be held liable for Plaintiffs' breach of contract claims against Bepalo.  Bergshav Aframax will respectfully show that, just as was the case in the Texas actions against the BERGITTA, this Court can and should vacate the attachment of the BERICA on any one of the three following grounds:

- The Rule B complaints are not truly properly verified.

**DEFENDANT BERGSHAV AFRAMAX, LTD.'S MOTION TO VACATE RULE B ATTACHMENTS, REQUEST FOR EXAMINATION OF PLAINTIFFS' CORPORATE REPRESENTATIVE PURSUANT TO LOCAL ADMIRALTY RULE 2.1, AND REQUEST FOR EXPEDITED RELIEF**

- The Rule B complaints fail to state a cause of action against Bergshav Aframax. Plaintiffs' claims rest on an alter-ego theory of liability, but there are no allegations in Plaintiffs' complaints that would support alter-ego liability on the part of Bergshav Aframax. Without allegations of some direct involvement or use of Bergshav Aframax in the alleged underlying fraud, there is no basis by which to pierce Bergshav Aframax's corporate veil or hold Bergshav Aframax's assets accountable for debts owed or fraudulent acts purportedly committed by other entities.

- Finally, even if the Court were to disregard Plaintiffs' inadequate pleadings, evidence submitted with this motion establishes that Bergshav Shipholding AS is a separate and distinct entity from its 51%-owned indirect subsidiary Bepalo – indeed, the formal protections for Bepalo's minority shareholders (as set forth in a 2011 Shareholder's Agreement) make clear that Bergshav Shipholding AS and/or Atle Bergshaven could not be alter egos of Bepalo as alleged. Because Plaintiffs cannot establish alter-ego status as between Bepalo and Bergshav Shipholding AS, there is no basis to justify traveling farther down the alter-ego-entity chain, as would be necessary to properly attach Bergshav Aframax's vessel.

## II.   REQUEST FOR EXPEDITIED HEARING

Plaintiffs cannot demonstrate sufficient grounds to support the drastic pre-judgment attachment remedy available under Rule B, and an expedited Rule E(4)(f) hearing is required. Rule E(4)(f) provides any person whose property has been attached under Rule B an immediate opportunity to appear before a district court to contest the attachment:

> Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules.

Fed. R. Civ. P. Supp. R. E(4)(f).

DEFENDANT BERGSHAV AFRAMAX, LTD.'S MOTION TO VACATE RULE B ATTACHMENTS, REQUEST FOR EXAMINATION OF PLAINTIFFS' CORPORATE REPRESENTATIVE PURSUANT TO LOCAL ADMIRALTY RULE 2.1, AND REQUEST FOR EXPEDITED RELIEF

This rule – which puts the burden on the plaintiff – is necessary to give a respondent its day in court after a plaintiff has obtained *ex parte* relief, outside of the adversarial system with minimal oversight, to seize another's property.

While Plaintiffs have agreed to accept substitute security in the amount of a USD 10,200,000 letter of undertaking in the Vessel's stead, Bergshav Aframax is still entitled to seek a prompt hearing under the rules.  Given that Plaintiffs' respective pleadings are deficient on their face, Bergshav Aframax respectfully invokes this right.

## III.   REQUEST FOR EXAMINATION OF PLAINTIFFS' CORPORATE OFFICER PURSUANT TO ADMIRALTY LOCAL RULE 2.1

As noted above, in the Texas actions brought against the BERGITTA, each of the Plaintiffs' respective complaints was accompanied by a verification from their designated corporate representative, Mr. Christian Krohn-Hansen, but during the evidentiary Rule E(4)(f) hearing, Krohn-Hansen testified that he was unable to verify the "facts" alleged in the complaints which supported Plaintiffs' alter ego theory of liability.  In contrast to the Texas cases, here, each of the Plaintiffs' verifications were executed by Plaintiffs' counsel, George Gaitas.  See Dkt. 1-1, Dkt. 18-1 and Dkt. 21-1.

Candidly, Bergshav Aframax believes that Plaintiffs' reliance upon verifications executed by their counsel, as opposed to a client representative with personal knowledge of the facts alleged in each complaint, is a transparent attempt to avoid both the procedural and substantive defects which resulted in the dismissal of Plaintiffs' lawsuits in the BERGITTA attachments.  That is, Plaintiffs seek to hide behind their counsel so that they do not have to take the affirmative step of verifying, under penalty of perjury, that the "facts" alleged in the complaint which purportedly establish the basis for alter-ego liability on the part of Bergshav Aframax are true and correct.  Fortunately, the Northern District of California's local rules prevent such gamesmanship.

Specifically, Local Admiralty Rule 2.1 provides as follows:

> ***Verification of every pleading, statement of right or interest, or other paper as required by Fed. R. Civ. P. Supp. B***, *C, D, and G **shall be***

**DEFENDANT BERGSHAV AFRAMAX, LTD.'S MOTION TO VACATE RULE B ATTACHMENTS, REQUEST FOR EXAMINATION OF PLAINTIFFS' CORPORATE REPRESENTATIVE PURSUANT TO LOCAL ADMIRALTY RULE 2.1, AND REQUEST FOR EXPEDITED RELIEF**

*upon oath or solemn affirmation*, or in the form provided by 28 U.S.C. § 1746, *by a party or by an authorized officer of a corporate party*.  If no party or authorized corporate officer is present within the district, verification of a complaint may be made by an agent, attorney in fact, or attorney of record, who shall state the sources of the knowledge, information and belief contained in the complaint; declare that the document verified is true to the best of that knowledge, information, and belief; state why verification is not made by the party or an authorized corporate officer; and state that the affiant is authorized to so verify.  A verification not made by a party or authorized corporate officer will be deemed to have been made by the party as if verified personally.  *If the verification was not made by a party or authorized corporate officer, any interested party may move*, with or without requesting a stay, *for the personal oath of* a party or *an authorized corporate officer*, *which shall be procured by commission or as otherwise ordered*.

Northern District of California Local Admiralty Rule 2.1 (emphasis added).

Preliminarily, Bergshav Aframax notes that none of Plaintiffs' verifications fully comply with Local Admiralty Rule 2.1's requirements, as none of the three counsel-executed verifications explain "**why** verification is not made by the party or an authorized corporate officer."  The simple fact that Plaintiffs are foreign entities located outside this district is no explanation as to **why** a corporate representative did not provide the verification – certainly this was no impediment when Krohn-Hansen executed all the verifications submitted in the prior Texas actions.

In any event, **Bergshav Aframax now invokes its right, under Local Admiralty Rule 2.1, to move that Plaintiffs be required to provide an authorized corporate officer to verify the allegations of their respective complaints**.  And given the circumstances of the prior Texas actions, and Krohn-Hansen's testimony therein where he was unable to support the key factual allegations going to alter-ego status, Bergshav Aframax respectfully asks that this Court order Plaintiffs' to produce their authorized corporate officer **as a live witness subject to cross-examination** by Bergshav Aframax's counsel.  As was clear after Krohn-Hansen's testimony in the Texas actions, Plaintiffs did not actually have any basis to support or believe their allegations that Bergshav Shipping should be held liable for the supposed "asset stripping" of Bepalo (i.e., the fraud / wrongful act which would justify piercing the corporate veil).  It seems exceedingly likely that any authorized

DEFENDANT BERGSHAV AFRAMAX, LTD.'S MOTION TO VACATE RULE B ATTACHMENTS, REQUEST FOR EXAMINATION OF PLAINTIFFS' CORPORATE REPRESENTATIVE PURSUANT TO LOCAL ADMIRALTY RULE 2.1, AND REQUEST FOR EXPEDITED RELIEF

corporate officer produced by Plaintiffs would similarly be unable to identify any facts that would support an alter-ego finding on the part of Bergshav Aframax.  Moreover, given Krohn-Hansen's oral testimony and written declarations submitted in the prior Texas actions detailing his key involvement with both the underlying charter parties, which form the basis of Plaintiffs' breach of contract claims against Bepalo, and his research into the corporate structure and relatedness of the various entities within the larger Bergshav group, to the extent anyone other than Krohn-Hansen is designated as an authorized corporate officer, Bergshav Aframax should be allowed the opportunity to question that person as to why Krohn-Hansen was not selected and to what extent they might possess any greater knowledge into the underlying facts alleged in the complaints than Krohn-Hansen would have.

In sum, Bergshav Aframax believes that the attachment of the BERICA was as ill-conceived and unsupported as the earlier seizure of the BERGITTA.  Plaintiffs should be forced to present an authorized corporate officer to prove, under cross-examination and subject to penalty of perjury, that such is not the case.  In the event that its expectations on this point prove true, Bergshav Aframax respectfully asks that the Court vacate the attachment and exercise its inherent power to order Plaintiffs and/or their counsel to reimburse Bergshav Aframax for the costs incurred in the defense of Plaintiffs' actions.

## IV.   MOTION TO VACATE:  ARGUMENT AND AUTHORITY

### A.   Applicable Standards of Review

To obtain pre-judgment attachment under Rule B, a plaintiff must show that: (1) [it] has a valid *prima facie* admiralty claim against the defendant; (2) the defendant cannot be found within the district; (3) the defendant's property may be found within the district; and (4) there is no statutory or maritime law bar to the attachment.  *Equatorial Marine Fuel Mgmt. Servs. Pte Ltd. v. MISC Berhad*, 591 F.3d 1208, 1210 (9th Cir. 2010).

On alter ego issues, "[f]ederal courts sitting in admiralty generally apply federal common law."  *Chan v. Society Expeditions, Inc*., 123 F.3d 1287, 1294 (9th Cir. 1997).  As a general rule, a

**DEFENDANT BERGSHAV AFRAMAX, LTD.'S MOTION TO VACATE RULE B ATTACHMENTS, REQUEST FOR EXAMINATION OF PLAINTIFFS' CORPORATE REPRESENTATIVE PURSUANT TO LOCAL ADMIRALTY RULE 2.1, AND REQUEST FOR EXPEDITED RELIEF**

parent corporation and its subsidiary are separate entities. *Harris Rutsky & Co. Insurances Services, Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1134 (9th Cir. 2003); see also *United States v. Bennett*, 621 F.3d 1131, 1136-37 (9th Cir. 2010) (parent corporation does not own the assets of its wholly-owned subsidiary by virtue of that relationship alone).  Common ownership is not sufficient to pierce the veil between corporations, and bare assertions of alter-ego status do not warrant attachment. *Stevedoring Services of America v. Ancora Transport, N.V.*, 59 F.3d 879, 883 (9th Cir. 1995); *see also Oldendorff Carriers GmbH & Co., KG v. Grand China Shipping (Hong Kong) Co., Ltd.*, CA C-12-074, 2013 WL 1628358, at *3 (S.D. Tex. Mar. 28, 2013) ("To state a *prima facie* claim against a third party for alter-ego liability, plaintiffs must make specific factual allegations from which alter-ego status can be inferred; conclusory allegations are insufficient.").

In a recent opinion involving a similar Rule B attachment action that was premised on alleged alter-ego liability, the Ninth Circuit explained as follows:

> To pierce the corporate veil, a party must show that (1) "the controlling corporate entity exercise[s] total domination of the subservient corporation, to the extent that the subservient corporation manifests no separate corporate interests of its own," *Chan*, 123 F.3d at 1294 (quoting *Kilkenny v. Arco Marine Inc.*, 800 F.2d 853, 859 (9th Cir. 1986)), (2) "injustice will result from recognizing [the subservient entity] as a separate entity," *M/V Am. Queen v. San Diego Marine Constr. Corp.*, 708 F.2d 1483, 1489 (9th Cir. 1983), and (3) the controlling entity "had a fraudulent intent or an intent to circumvent statutory or contractual obligations," *ibid.*

*Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 898 (9th Cir. 2021).

And while some federal circuits only require a showing of **either** dominant control **or** a showing of fraud (*see, e.g., Kirno Hill Corp. v. Holt*, 618 F.2d 982, 985 (2d Cir. 1980)), "the Ninth Circuit has a conjunctive test: there must be domination and control **and** injustice from not piercing the veil **and** some form of [fraud or] ill intent" (*Pac. Gulf Shipping Co.*, 992 F.3d at 899 (emphasis in original; citing *M/V American Queen v. San Diego Marine Constr. Corp.*, 708 F.2d 1483, 1489-90 (9th Cir. 1983) and *Seymour v. Hull & Moreland Eng'g*, 605 F.2d 1105, 1109-13 (9th Cir. 1979))).  Accordingly, to the extent that Plaintiffs' claims are premised on the existence of some purported

**DEFENDANT BERGSHAV AFRAMAX, LTD.'S MOTION TO VACATE RULE B ATTACHMENTS, REQUEST FOR EXAMINATION OF PLAINTIFFS' CORPORATE REPRESENTATIVE PURSUANT TO LOCAL ADMIRALTY RULE 2.1, AND REQUEST FOR EXPEDITED RELIEF**

1  underlying fraud, their complaints must comply with Rule 9(b)'s heightened pleading standard:

2  "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the

3  misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting

4  *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).

5      Plaintiffs Sikousis, K Investments and Bahla carry the burden of showing why the arrest of

6  the BERICA should not be vacated.  See Fed. R. Civ. P. Supp. R. E(4)(f).  While the Ninth Circuit

7  does not appear to have defined the standard for the plaintiff's burden, district courts within the

8  Ninth Circuit have held that a plaintiff must show probable cause / reasonable grounds to support the

9  attachment.  *See, e.g., Tefida v. 1,925 Cartons of Crab*, 2013 WL 4049011, *3 (W.D. Wash. Aug. 9,

10  2013); *Kite Shipping LLC v. San Juan Navigation Corp.*, 2012 WL 4049936, *4 (S.D. Cal. Sept. 13,

11  2012); *OS Shipping Co. Ltd. v. Global Maritime Trust(s) Private Ltd.*, 2011 WL 1750449, *5 (D. Or.

12  May 6, 2011).  Plaintiffs have failed to meet that threshold.

13      **B.      Plaintiffs Failed to Allege *Prima Facie* Claims Against Bergshav Aframax**

14      For the purposes of this section of the motion to vacate and for argument's sake only,

15  Defendant will assume the Plaintiffs' respective allegations of the purported asset stripping from

16  Bepalo (their contractual counter party) are true, as well as the alleged "facts" supporting Plaintiffs'

17  alter-ego theory of liability.  (Defendant would note that, aside from the quantum of their claimed

18  damages, and the specific vessel that was the subject of each Plaintiff-specific charter party,

19  Plaintiffs' allegations of the circumstances of Bepalo's default, and the bases for all the named

20  Defendants' alleged joint alter-ego status, are virtually identical.)  However, even taking Plaintiffs'

21  claims at face value, they have failed to plausibly allege *prima facie* claims as against Bergshav

22  Aframax.  Instead, at best, Plaintiffs' complaints only plausibly allege alter-ego liability for Bepalo's

23  debts against: 1) B-Gas A/S; 2) Bergshav Shipping Ltd.; 3) B-Gas Holding Ltd; 4) Bergshav

24  Shipholding AS; 5) Bergshav Invest AS; 6) LPG Invest AS; and, 7) Atle Bergshaven, individually.

25      Simply put, Plaintiffs have alleged no act of wrongdoing by Bergshav Aframax or sufficient

26  facts from which to impute an alter-ego status between it and those entities that allegedly defrauded

27

28  **DEFENDANT BERGSHAV AFRAMAX, LTD.'S MOTION TO VACATE RULE B ATTACHMENTS, REQUEST FOR EXAMINATION OF PLAINTIFFS' CORPORATE REPRESENTATIVE PURSUANT TO LOCAL ADMIRALTY RULE 2.1, AND REQUEST FOR EXPEDITED RELIEF**

Plaintiffs.  This is perhaps most clearly set out by reference to Tables I and III included in each of Plaintiffs' respective complaints.  (Tables I, II and III are identical in each respective complaint.  For the purposes of this motion, Table II is irrelevant, as it merely purports to show an alleged interim corporate structure in June 2020.  Tables I and III purport to show the corporate organization prior to and following the alleged "asset stripping," and are therefore the key allegations by Plaintiffs.)  As is shown on the following pages, **no assets** of Bergshav Shipping Ltd, Bepalo (B-Gas Limited), or B-Gas AS **are shown to have been transferred to Bergshav Aframax** – instead, all that is alleged are that assets and entities that were previously owned by Bergshav Shipping Ltd (or its subsidiaries) were ultimately transferred such that they are now owned by Bergshav Invest AS (or its subsidiaries).  **But Bergshav Aframax is completely absent from any relevant chain of ownership**.  In the illustrations below (taken from Plaintiffs' pleadings), we have added a green indicator to highlight Bergshav Aframax and its vessel, and red indicators to identify the alleged "bad actors" as asserted by Plaintiffs.

TABLE I



**DEFENDANT BERGSHAV AFRAMAX, LTD.'S MOTION TO VACATE RULE B ATTACHMENTS, REQUEST FOR EXAMINATION OF PLAINTIFFS' CORPORATE REPRESENTATIVE PURSUANT TO LOCAL ADMIRALTY RULE 2.1, AND REQUEST FOR EXPEDITED RELIEF**

1

TABLE III

2

3

4

5

6

7

8

9

10

11

12



13

14     Plaintiffs' own illustrations make clear the flaw in their claims against Bergshav Aframax

15  and its vessel, the BERICA – namely, Bergshav Aframax had no direct connection to the alleged

16  fraud which purportedly justifies piercing the corporate veil – that is, Bergshav Aframax was not

17  involved in the alleged "asset stripping" from Bepalo.  Bergshav Aframax did not transfer any assets

18  from its possession, and did not receive any of the assets (*i.e.*, the vessels B GAS MAUD, B GAS

19  CRUSADER, B GAS COMMANDER and/or B GAS CHAMPION) which were allegedly indirectly

20  owned by Bepalo.  Bergshav Aframax's corporate form and the asset it possesses (i.e., the BERICA)

is wholly unchanged when comparing the alleged pre- and post-asset stripping organizational charts.

21     To pierce the corporate veil, "[t]he entity sought to be held liable **must** be involved in misuse

22  of the corporate form."  *d'Amico Dry d.a.c. v. Nikka Fin., Inc.*, 429 F. Supp. 3d 1290, 1302 (S.D.

23  Ala. 2019) (emphasis added).  Indeed, only a year ago, the Ninth Circuit explicitly held that the

24  entity to be held liable under an alter-ego theory must itself have been "used [] for a fraudulent

25  purpose."  *Pac. Gulf Shipping Co.*, 992 F.3d at 899; *accord Bridas S.A.P.I.C. v. Gov't of

26  Turkmenistan*, 447 F.3d 411, 416-17 (5th Cir. 2006) ("To prevail, [the judgment creditor] had to

27

28  **DEFENDANT BERGSHAV AFRAMAX, LTD.'S MOTION TO VACATE RULE B ATTACHMENTS,
REQUEST FOR EXAMINATION OF PLAINTIFFS' CORPORATE REPRESENTATIVE PURSUANT TO
LOCAL ADMIRALTY RULE 2.1, AND REQUEST FOR EXPEDITED RELIEF**

demonstrate that the [dominant entity] used its control over [dominated entity] to commit a 'fraud or injustice' against [the judgment creditor].... In this contract dispute, [the judgment creditor] thus had to connect the [dominant entity's] misuse of its [dominated entity] to the fraud or injustice against it."); *Eitzen Chem. (Singapore) PTE, Ltd. v. Carib Petroleum*, 749 F. App'x 765, 770 and 772 (11th Cir. 2018) (repeatedly quoting *United States v. Jon-T Chemicals, Inc.*, 768 F.2d 686, 692 (5th Cir. 1985) for principle that "fraud is an essential element of an alter ego finding"); *N.L.R.B. v. Greater Kansas City Roofing*, 2 F.3d 1047, 1053 (10th Cir. 1993) (quoting Fletcher Cyclopedia of the Law of Corporations for proposition that "a necessary element of [alter-ego] theory is that the fraud or inequity sought to be eliminated must be that of the party against whom the doctrine is invoked, and ***such party must have been an actor in the course of conduct constituting the abuse of corporate privilege***" (emphasis added)).

"[A]bsent some other wrong or injustice that would result if the corporate veil is not pierced, a creditor's inability to collect a judgment alone is insufficient to justify piercing the corporate veil." *Carib Petroleum*, 749 F. App'x at 773. This is because "virtually all cases in which there is an attempt to pierce the corporate veil" involves "a corporation ... incapable of paying all its debts...." *Greater Kansas City Roofing*, 2 F.3d at 1053. And again, "a single person's common ownership of [multiple] corporations [is] insufficient to prove" that those entities are alter-egos. *Pac. Gulf Shipping Co.*, 992 F.3d at 898 (citing *Chan*, 123 F.3d at 1294).

Critically (and fatal to their case), Plaintiffs have not alleged any fraud on the part of Bergshav Aframax that would indicate Bergshav Aframax participated in the alleged asset stripping which forms the basis of the purported underlying "fraud or injustice." Moreover, Plaintiffs' alter-ego allegations are almost non-existent with respect to Bergshav Aframax – the only allegations made that concern this specific Defendant are that:

- Atle Bergshaven is the chairman of the board of Bergshav Shipholding AS[;]

  B-Gas A/S; Bergshav Shipping, Ltd; B-Gas, Limited; B-Gas Holding Ltd.;

**DEFENDANT BERGSHAV AFRAMAX, LTD.'S MOTION TO VACATE RULE B ATTACHMENTS, REQUEST FOR EXAMINATION OF PLAINTIFFS' CORPORATE REPRESENTATIVE PURSUANT TO LOCAL ADMIRALTY RULE 2.1, AND REQUEST FOR EXPEDITED RELIEF**

1    **Bergshav Aframax, Ltd**.; Bergshav Invest AS; and LPG Invest AS.  Dkt. 1 at

2    p. 5 (emphasis added).

3    •    Bergshav Shipping Ltd. owned 100% of **Bergshav Aframax Ltd.**, which at

4        all times material hereto was and continues to be the registered owner of the

5        BERICA.  Dkt. 1 at p. 12 (emphasis added).

6    •    "All the Cypriot entities [including Bergshav Aframax] operate out of an

7        office that lists its address as Miltonos Street No. 32, 3050, Limassol,

8        Cyprus."  Dkt. 1 at p. 21.

9    •    Bergshav Aframax was included in a "consolidated financial statement"

10       related to Bergshav Shipholding AS.  Dkt. 1 at p. 22.

11   •    The BERICA was mentioned in the 2020 Annual Financial Report of

12       Bergshav Shipholding AS.  Dkt. 1 at p. 22.

13   •    "There is substantial overlapping in the ownership of the corporate entities

14       made defendants in this proceeding...  Bergshav Shipholding AS is the sole

15       shareholder of Bergshav Shipping Ltd. which, in turn owns **Bergshav**

16       **Aframax Ltd**., the registered owner of the M/T BERICA."  Dkt. 1 at p. 23

17       (emphasis added).

18   •    "Defendants Bergshav Shipholding AS and Atle Bergshaven, used the

19       purported separate incorporation of their surrogate subsidiaries B-Gas Limited

20       a/k/a Bepalo LPG Shipping Ltd.; B-Gas A/S; Bergshav Shipping Ltd.;

21       **Bergshav Aframax Ltd**.; LPG Holding AS, B-Gas Holding Ltd. and LPG

22       Invest AS abusively to engage in fraudulent corporate restructuring and asset

23       reallocation in anticipation of the maritime arbitration award made against B-

24       Gas Limited a/k/a Bepalo LPG Shipping Ltd.  As part of this process the

25       controlling beneficial owner of the BERICA, defendant Bergshav Shipping,

26       Ltd. fraudulently transferred its controlling interest over B-Gas Limited to B-

27

28   **DEFENDANT BERGSHAV AFRAMAX, LTD.'S MOTION TO VACATE RULE B ATTACHMENTS, REQUEST FOR EXAMINATION OF PLAINTIFFS' CORPORATE REPRESENTATIVE PURSUANT TO LOCAL ADMIRALTY RULE 2.1, AND REQUEST FOR EXPEDITED RELIEF**

Gas Holding AS gratuitously, and thereby facilitated and enabled the complete asset-stripping of the bareboat charterer B-Gas Limited in favor of LPG Invest AS." Dkt. 1 at p. 26 (emphasis added).

- "In having committed the acts summarized [herein], the said Defendants completely dominated and controlled B-Gas Limited for an improper and or fraudulent purpose, i.e. to render it incapable of performing the contractual obligations it had undertaken, in order to force Plaintiff to yield to their demands for reduction of hire and extension of credit. The said Defendants' bad intent is transparently obvious in their taking over and exploiting the assets they stripped off B-Gas Limited. Accordingly, it would be fair and equitable to pierce (or reversely pierce) the corporate veil of B-Gas Limited a/k/a Bepalo LPG Shipping Ltd.; B-Gas AS; Bergshav Shipping Ltd.; Bergshav Shipholding AS; LPG Invest AS; **Bergshav Aframax Ltd**.; and B-Gas Holding Ltd. in order to reach the economic value of the M/T BERICA, which said Defendants have compartmentalized in a separate corporate pocket, to the detriment of Plaintiff." Dkt. 1 at p. 27.

(Each of the above assertions are mirrored in the Complaints in Intervention filed by K Investments and Bahla. See Dkt. 18 and Dkt. 21.)

In sum, the only **facts** which Plaintiffs have alleged concerning Bergshav Aframax is that it has common office locations and some overlapping ownership with entities which "engage[d] in fraudulent corporate restructuring and asset reallocation" of assets owned by their contractual counter-party, Bepalo. Plaintiffs claim that Bergshav Aframax's parent company, "Bergshav Shipping, Ltd.[,] fraudulently transferred its controlling interest over [Bepalo] to B-Gas Holding AS gratuitously, and thereby facilitated and enabled the complete asset-stripping of the bareboat charterer [Bepalo] in favor of LPG Invest AS." But Plaintiffs do not contend that Bergshav Aframax itself had anything to do with the allegedly "fraudulent transfers" – those allegations are specific to

14

**DEFENDANT BERGSHAV AFRAMAX, LTD.'S MOTION TO VACATE RULE B ATTACHMENTS, REQUEST FOR EXAMINATION OF PLAINTIFFS' CORPORATE REPRESENTATIVE PURSUANT TO LOCAL ADMIRALTY RULE 2.1, AND REQUEST FOR EXPEDITED RELIEF**

Bergshav Shipping, Ltd.  Plaintiffs' bare contention that "Defendants' bad intent is transparently obvious in their taking over and exploiting the assets they stripped off B-Gas Limited" is unsupported with respect to Bergshav Aframax (*i.e.*, the entity which Plaintiffs seek to recover from) – Plaintiff have failed to allege **how** Bergshav Aframax purportedly "exploited" the assets of Bepalo/B Gas Limited.  As such, Plaintiffs have failed to establish that an injustice would result from respecting the corporate separateness of Bergshav Aframax, an entity unrelated to the underlying charter parties with Plaintiffs, uninvolved in the decision to wind down Bepalo, and uninvolved in the alleged transfer of assets from Bepalo.  Again, Plaintiffs are subject to the heightened pleadings standard of Fed. R. Civ. P. 9(b), which requires a plaintiff to set forth "the who, what, when, where, and how of the alleged fraud" (*see White Rosebay Shipping S.A. v. HNA Group Co., Ltd.*, CA C-12-096, 2012 WL 6858239, at *6 (S.D. Tex. Dec. 5, 2012)) – a standard that Plaintiffs' complaints do not even come close to meeting with respect to Bergshav Aframax. Plaintiffs have failed to state a plausible *prima facie* maritime claim specifically against Bergshav Aframax.  As such, Plaintiffs have failed to comply with the requirements for a Rule B attachment, and the arrest of the BERICA must be vacated.

## C.    The Evidence Establishes that Bepalo is Separate and Distinct from Bergshav Shipholding AS

Courts look to a laundry list of factors when assessing whether a subsidiary is the alter ego of its parent.  The Ninth Circuit has recently referenced the following, non-exhaustive list:

> (1) disregarding corporate formalities such as, for example, in issuing stock, electing directors, or keeping corporate records;  (2) capitalization that is inadequate to ensure that the business can meet its obligations;  (3) putting funds into or taking them out of the corporation for personal, not corporate, purposes; (4) overlap in ownership, directors, officers, and personnel; (5) shared office space, address, or contact information; (6) lack of discretion by the allegedly subservient entity; (7) dealings not at arms-length between the related entities; (8) the holding out by one entity that it is responsible for the debts of another entity; and (9) the use of one entity's property by another entity as its own.

**DEFENDANT BERGSHAV AFRAMAX, LTD.'S MOTION TO VACATE RULE B ATTACHMENTS, REQUEST FOR EXAMINATION OF PLAINTIFFS' CORPORATE REPRESENTATIVE PURSUANT TO LOCAL ADMIRALTY RULE 2.1, AND REQUEST FOR EXPEDITED RELIEF**

*Pac. Gulf Shipping Co.*, 992 F.3d at 898.  However, "the mere presence of some of these indicia is not dispositive..." *Id.* (citing *Adm'rs of Tulane Educ. Fund v. Ipsen, S.A.*, 450 F. App'x 326, 330-31 (5th Cir. 2011) for proposition that "indirect ownership of all of a corporation's stock, a number of common officers and directors, and substantial control over an alleged subservient corporation's general policy decisions were insufficient to establish a *prima facie* showing of alter ego because the entities also observed corporate formalities and there was no more control than appropriate for a wholly-owned subsidiary.").

Preliminarily, Defendant notes that the declaration of Christian Ditlev-Simonsen (attached as Exhibit E), a lawyer with the Norwegian law firm of Advokatfirmaet Simonsen Vogt Wiig AS, confirms that Bergshav Shipholding AS is a validly existing business entity that is and remains in compliance with Norwegian-corporate law.

Next, the accompanying declarations of Trond Eilertsen and Andreas Hannevik (attached as Exhibits F and G, respectively) establish that as between Bergshav Shipholding AS and Bepalo:

- there is incomplete unity of ownership;
- there are (and have been since Bepalo's formation) formal agreements in place protecting the minority shareholder interests (who own 49% of Bepalo) from unilateral action and control by B-Gas Holding Ltd, the majority shareholder;
- two (2) Bepalo board members were appointed by minority shareholders, and supermajority votes (including at least one minority appointed director) are necessary in order to take certain corporate actions;
- Bepalo was sufficiently capitalized until the unforeseeable global pandemic disrupted its business activities;
- no improper commingling of funds exists;
- the daily operations of the companies are kept separate; and
- there is no sharing of property.

**DEFENDANT BERGSHAV AFRAMAX, LTD.'S MOTION TO VACATE RULE B ATTACHMENTS, REQUEST FOR EXAMINATION OF PLAINTIFFS' CORPORATE REPRESENTATIVE PURSUANT TO LOCAL ADMIRALTY RULE 2.1, AND REQUEST FOR EXPEDITED RELIEF**

1    Critically, while Bergshav Shipholding AS is indirectly majority-owned by Atle Bergshaven,

2    Bepalo has at all relevant times had three (3) distinct shareholders:

3    - 51% by B-Gas Holding Ltd, a wholly owned subsidiary of Bergshav
4         Shipholding AS;

5    - 10% by Lorentzen Skibs AS ("Lorentzen"); and,

6    - 39% by Pareto Secondary Maritime Opportunity Fund ("Pareto").

7    Both Lorentzen and Pareto have been shareholders since Bepalo was first incorporated in

8    January 2011.  (The specific Pareto entity(s) holding the 39% ownership stake in the company has

9    changed since the founding of Bepalo, but the ownership of these shares has always remained within

10   the overall Pareto group.)  Lorentzen is a family-owned shipping and investment company that does

11   business and invests in a number of businesses, including those related to the Bergshav group.

12   (Additional background on Lorentzen is available at its public website – http://www.lorskibs.no/.)

13   Similarly, Pareto is a non-Bergshav group entity, which focuses on shipping / offshore investment

14   opportunities.    (General    information    regarding    the    Pareto    group    is    available    at

15   https://www.paretoai.no/.)

16   To highlight the autonomous nature of Lorentzen and Pareto vis- à-vis the Bergshav group

17   entities, Lorentzen and Pareto's investments in Bepalo were contingent on certain protections for the

18   minority shareholders being formalized in a Shareholders Agreement that was executed in 2011 (*i.e.*,

19   shortly after the company's formation).   This agreement limits the majority shareholder (*i.e.*,

20   Bergshav Shipholding AS' wholly owned subsidiary) from exercising complete and dominant

21   control of the company (as has been alleged by Plaintiffs).   For example, the Shareholders

22   Agreement (available at Ex. G-2) provides that:

23   - Any amendment to the company's Articles of Association require approval by
24        shareholders representing 61% of shares;

25

26

27

28   **DEFENDANT BERGSHAV AFRAMAX, LTD.'S MOTION TO VACATE RULE B ATTACHMENTS,
     REQUEST FOR EXAMINATION OF PLAINTIFFS' CORPORATE REPRESENTATIVE PURSUANT TO
     LOCAL ADMIRALTY RULE 2.1, AND REQUEST FOR EXPEDITED RELIEF**

- The agreement of shareholders representing 61% of shares is needed to pass resolutions related to the issuance of dividends or other distributions to the shareholders or third parties;

- Each shareholder representing between 10% and up to 50% of shares is entitled to appoint one (1) director;

- Resolutions involving the sale or purchase of vessels requires a supermajority vote of at least five (5) directors, with at least one (1) of those votes coming from a director appointed by a minority shareholder;

- Similar supermajority director approval is necessary for entering into any agreement between the company and with any other shareholder-affiliated group;

- Supermajority approval is required to enter or terminate agreements with any Managers;

- Supermajority approval is required to enter into any agreement granting security over assets of any member of the group;

- Supermajority approval is required to enter into any long-term (24+ month) bareboat charter party;

- Supermajority approval is required for the sale or purchase of vessels; and,

- Supermajority approval is required to increase share capital and/or to issue convertible debt.

Clearly, if Bergshav Shipholding AS (or Atle Bergshaven, individually) had intended for Bepalo to merely be an indistinguishable extension of its majority-shareholding parent company(s), it would not have agreed to limit its control over Bepalo or, indeed, even take on non-Bergshav group shareholders.  Moreover, the fact that Lorentzen and Pareto have been shareholders for roughly 10 years confirms that neither Atle Bergshaven nor Bergshav Shipholding AS (via its wholly owned subsidiary) dominated Bepalo to the extent necessary to find alter ego status – were

**DEFENDANT BERGSHAV AFRAMAX, LTD.'S MOTION TO VACATE RULE B ATTACHMENTS, REQUEST FOR EXAMINATION OF PLAINTIFFS' CORPORATE REPRESENTATIVE PURSUANT TO LOCAL ADMIRALTY RULE 2.1, AND REQUEST FOR EXPEDITED RELIEF**

that the case, the minority shareholders could and would have sold their stake in the company. Finally, the declaration of Andreas Hannevik clearly lays out the circumstances and reasoning involved in first attempting to secure additional liquidity during a time of economic stress brought on by the global pandemic, and then the unfortunate but necessary decision to wind down Bepalo's business.  In this regard, the minutes from multiple "Extraordinary General Meetings" of Bepalo's board in 2020 confirms that the decisions to obtain liquidity via sale-leasebacks of its vessels, and later to wind down the company, were done according to proper corporate formalities and not simply at the sole whim of Atle Bergshaven.  See the Board Meeting Minutes attached to Ex. G as Ex. G-4.

In sum, the evidence shows that Bepalo was a legitimate business run with the involvement and approval of multiple shareholders and their representative board members – it was neither wholly owned by Bergshav group entities and/or Atle Bergshaven, individually, nor did it exist as a mere extension of Bergshav Shipholding AS.  Bepalo's funds and assets were not improperly bled off for personal use by Mr. Bergshaven – instead, in the face of disastrous and unforeseeable market conditions, the board of Bepalo unanimously took all feasible actions to extend the company's continued business viability.  It was only when Plaintiffs and their representatives refused to negotiate a mutually agreeable solution that Bepalo's board was regrettably forced to wind down and liquidate the company.  In other words, Plaintiffs drove Bepalo to the point of bankruptcy, and now complain that Bepalo is bankrupt.  Piercing the corporate veil of not one, not two, but at least four different entities (see Ex. F at Ex. F-2; the alter-ego chain to trace is as follows: Bepalo → B-Gas Holding Ltd → Bergshav Shipholding AS → Bergshav Shipping Ltd → Bergshav Aframax Ltd) so that Plaintiffs could recover against the assets of Bergshav Aframax – an entity entirely unrelated to either the underlying charter parties or Bepalo's (completely legal and rational) business decisions – is wholly unjustified.

V.   **CONCLUSION AND PRAYER**

Plaintiffs were required to plead that that the corporate relationship between Bergshav Aframax and Bepalo was used to effect a fraud against them, and to allege specific facts that would

**DEFENDANT BERGSHAV AFRAMAX, LTD.'S MOTION TO VACATE RULE B ATTACHMENTS, REQUEST FOR EXAMINATION OF PLAINTIFFS' CORPORATE REPRESENTATIVE PURSUANT TO LOCAL ADMIRALTY RULE 2.1, AND REQUEST FOR EXPEDITED RELIEF**

1  support this contention.  Plaintiffs did not and could not make this showing.  Instead, Plaintiffs own

2  pleadings and demonstrative graphics establish that Bergshav Aframax does no more than share the

3  same ultimate parent company (and only a partial-owning parent company in the case of Bepalo),

4  and that Bergshav Aframax **played no part** in the alleged stripping of assets from Bepalo.

5  Additionally, Plaintiffs have failed to plead facts or produce sufficient evidence going to the other

6  criteria considered by the Ninth Circuit in veil-piercing cases to support a finding that Bepalo is one

7  and the same as Bergshav Aframax.  Because Plaintiffs have failed to meet their burden to plead

8  *prima facie* maritime claims against Bergshav Aframax, the writs of attachment against its Vessel,

9  the BERICA, must each be vacated.

10      WHEREFORE, Bergshav Aframax Ltd. prays that this Honorable Court compel Plaintiffs to

11  produce authorized corporate officer(s) to be questioned on their ability to verify the facts that are

12  alleged in their respective complaints, vacate the attachments of the letter of undertaking, which

13  stands as substitute security for the M/T BERICA, and for all such other and further relief as may be

14  just and proper.

15

16  DATED:  June 28, 2022                    BLANK ROME LLP

17

18                                           By: */s/ Allen Ho*_____
                                                 Allen Ho
19                                               Keith B. Letourneau
                                                 Zachary Cain
20                                           Attorneys for Defendant
                                             BERGSHAV AFRAMAX, LTD.

21

22

23

24

25

26

27

28

**DEFENDANT BERGSHAV AFRAMAX, LTD.'S MOTION TO VACATE RULE B ATTACHMENTS, REQUEST FOR EXAMINATION OF PLAINTIFFS' CORPORATE REPRESENTATIVE PURSUANT TO LOCAL ADMIRALTY RULE 2.1, AND REQUEST FOR EXPEDITED RELIEF**